Sᴛᴀᴛᴇ *et al. v.* Mɪɴᴇʀ *et al.*

(*Knoxville,* September Term, 1938.)

Opinion filed July 3, 1939.*

---

*Designated for publication April 4, 1940.

PHILLIPS & HALE, of Rogersville, for complainants.

SUSONG & PARVIN, of Greeneville, and LINDSAY, YOUNG & ATKINS, of Knoxville, for defendants.

MR. JUSTICE COOK delivered the opinion of the Court.

This appeal presents a controversy over the balance due to Hawkins County by E. C. Miner, County Trustee, upon expiration of his term, September 1, 1936. The bill was filed by Hawkins County against the trustee and his surety, the American Surety Company of New York.

After deducting $111.96, the excess of fees for the year 1935-1936 over the maximum salary, which was applied as a credit on the premium paid by the trustee on his official bond, the chancellor found a balance of $2790.82 in the hands of the trustee. To this he applied the two per cent a month penalty, as provided by Code section 1635, against the defendant Miner, which at the date of the decree aggregated sixty per cent and amounted to $1674.49. A decree was entered against the defendant Miner for $4911.84, being the sum of the balance found due, the penalty, and ten per cent attorneys' fees. The chancellor was of opinion that the surety was not chargeable with the penalty of two per cent a month under Code section 1635, but imposed a penalty of ten per cent and a ten per cent attorneys' fee, as provided by Code section 1835. The amount of the decree against the surety was $3854.42.

All the parties prayed and were granted an appeal and all have assigned errors. The county complains of the action of the chancellor (1) in declaring Chapter 320, Private Acts of 1921, unconstitutional; (2) in refusing to hold the surety liable for the two per cent a month penalty; (3) and for refusing to add six per cent interest and twelve and a half per cent damages to the amount of the judgment against the surety company under Code section 1778.

■ Through the first assignment of error, it is insisted that the chancellor could not consider the constitutionality of the Act of 1921 because the question was not raised by pleadings. It may be seen upon reference to the answers of both defendants that the constitutionality of the Act was directly challenged by the charge that the Act is in conflict with the general law and is unconstitutional and void. The statement in the answers of defendants that the private act relied on by the county as a basis for fixing the trustee's commission is in conflict with the general law and for that reason void, meets the requirement of pleading the unconstitutionality of an act, if it is necessary to do so, as indicated in *Ogilvie* v. *Hailey,* 141 Tenn., 392, 393, 210 S. W., 645.

■ The chancellor committed no error in considering the constitutionality of Chapter 320, Private Acts of 1921, and in declaring it unconstitutional. The act, which is applicable to Hawkins County alone, fixes the trustee's commissions at a rate different from that allowed by general law to all other county trustees in the state. It has been repeatedly declared by this Court that such acts violate Article 2, Section 8, of the Constitution, and for that reason cannot stand. *Peters* v. *O'Brien,* 152 Tenn., 466, 278 S. W., 660; *Shanks* v. *Hawkins County,*

160 Tenn., 148, 150, 22 S. W. (2d), 355; *Harbert* v. *Mabry,* 166 Tenn., 290, 61 S. W. (2d), 652.

 It is urged on behalf of the county that the penalty of two per cent a month, provided by Code section 1635, should have been imposed upon the defendant American Surety Company. That section of the Code was amended by Chapter 95, Acts of 1933, by a proviso that the surety on a trustee's bond should not be charged with a penalty or attorney's fee until after demand made and refusal of the surety to pay over the sum due from the trustee. In this case there was a controversy between the trustee and the county over the sum due. That is shown by a different result found by two sets of auditors and a disagreement of the chancellor with both audits. The controversy arose over whether the trustee's commissions should be measured by the general law or by the private act, and whether the trustee was allowed commissions on revenues distributed by the state to the county. Until this controversy was settled, the amount of the county's funds in the hands of the trustee could not be known and proper demand could not be made. Drastic penalties are not favored and statutes imposing them are strictly applied. The penalty imposed on county trustees and their sureties was designed to prevent misappropriation of public revenue and upon misappropriation to hasten its replacement. It cannot be made applicable to the facts of this case. This controversy covers the period of defendant Miner's service as trustee, from September, 1932, to September, 1936, and throughout that period there was a controversy over his commissions. The auditors report a balance due from the defendant Miner of $9372.05. Credits allowed by the chancellor reduce this balance to $2790.82. We find that the chancellor committed no error in refusing to penalize the surety on the

trustee's bond because the amount which the surety should account for and pay over was in controversy and could not be ascertained until statutes which fixed the compensation were passed on, construed, and applied.

There is no merit in the insistence of the county that the six per cent interest and twelve and a half per cent damages should have been charged against the trustee and surety under Code section 1778. That section relates to judgments upon motion in Circuit Court against officers who have collected state revenue and failed to account for it to the proper state official.

The defendant Miner and the surety company severally assigned errors to the action of the chancellor in refusing to allow credits for commissions on what are commonly known as State aid funds, highway reimbursement funds, and the income tax funds. These items were derived from the tax on oil and gasoline and from the income tax on bonds. By Chapter 45, Acts of 1931, Code section 3291 (1) *et seq.*, a portion of the gasoline tax collected by State officials was allotted to the counties for maintenance and improvement of county roads. The *pro rata* to each county was paid monthly upon warrant of the comptroller to the county trustee for use by the county highway authorities on roads and bridges. It was received by the trustee and paid out by him upon warrant of the county judge. Whether or not the county trustee was payable a commission on this fund seems to have been a source of controversy which was settled by Chapter 152, Acts of 1937, which provided for payment of a one per cent commission to the trustee for receiving and disbursing the fund. By Chapter 20, Acts Extra Session, 1931, section 17, Code section 1123(31), a portion of the income tax imposed by the Hall Income Tax Law is made distributable to the counties, and the county's share is

paid to the trustee upon warrant of the comptroller. It is county revenue to be paid out by the trustee upon warrant of the county judge.

By Chapter 23, Acts of 1927, amended by Chapter 59, Acts of 1931, both brought into Code section 3254, the state made provision to relieve counties for expenditures made by them upon highways appropriated and used by the state in its connecting system of roads. This act is known as the Highway Reimbursement Act. By it the State immediately assumed the interest on county bonds issued for the construction of such roads and also assumed payment of the bonds at the end of a stated period. To meet the obligation assumed, the state appropriated one cent of the gasoline tax. This appropriation by the State was for a State purpose and the fund appropriated could not be devoted to any other use by the county. The act does not provide how the fund passed to the county with which to meet the interest on bonds shall be paid. The right of the trustee to commissions is dependent upon the nature of the funds, their origin, and the use to which they are devoted; and to provisions of the law providing for the trustee's commissions. The compensation of county trustees subject to the maximum salary law, Chapter 101, Acts of 1921, is made up of commissions for receiving and disbursing revenue, as provided by Section 72, Chapter 602, Acts of 1907, carried into Section 1621 of the Code. It is the settled policy of the State that a public officer can receive no fees or compensation except as expressly authorized by law. Code section 10655; *State ex rel.* v. *Cement Co.*, 151 Tenn., 53, 60, 267 S. W., 595. We must then consider the statutes to determine the right of the trustee to charge commissions on the funds involved in this controversy. Under Code section 1621, the trustee is allowed commissions on State taxes

collected and paid to the State, and on revenue derived from direct taxes levied for county, school, and special purposes, and on county revenue received from county officials or other collecting officers. The funds paid over by the comptroller for maintenance and improvement of county roads, as provided by Code section 3291(1), and the distributive share of counties in the income tax paid over as provided by Code section 1123(31), are county revenue for use in county purposes, and they are funds received from or through collecting officers upon which the trustee is allowed a commission of one per cent. The funds appropriated by the State to reimburse the counties on account of their expenditures on highways is an appropriation of state revenue made for use in paying obligations assumed by the State. It is declared in Code section 3260, as amended by Public Acts 1931, chapter 6, that:

"The primary purpose of this law is to reimburse the counties in the amounts contributed by them to the construction of the state highways; and, accordingly, all such counties as on January 1st, 1929, shall have outstanding bonds representing the amounts or any part of the amounts so contributed by them, shall be bound to hold and apply all moneys so distributed to them for the sole purpose of paying the principal and interest of such outstanding bonds until all of such outstanding bonds and interest thereon shall have been paid and discharged.

"The County Judge or Chairman, County Trustee and the County Court Clerk, . . . are hereby constituted a commission to invest the funds paid to said counties under this Act, should they be unable to purchase the Highway bonds for a reasonable sum, first for the purchase of any other outstanding bonds of the county, if

the same can be had at a fair price, second, bonds of the State of Tennessee, or bonds of other counties, cities and towns of the State of Tennessee, or in tax anticipation warrants, or bonds for the county affected.''

It cannot be implied from these provisions that the State fund appropriated to relieve the counties of obligations assumed by the State and placed under control of the county court clerk, the county trustee, and county judge, as trustees for the fund, falls within the classification of county funds upon which the trustee may be allowed a commission for receiving and disbursing county revenue. This conclusion results from the fact that commissions allowable to the trustee are upon county revenue received and disbursed by him. A commission cannot be extended by implication to state revenue entrusted to the county for use in payment of the county's obligations assumed by the State.

We find no merit in the assignment of error upon the refusal of the chancellor to allow commissions on the reimbursement fund arising from the statutes carried into Code section 3254, but we are of the opinion that the chancellor should have allowed commissions on the county's distributive share of the gasoline tax paid to the trustee upon warrant of the comptroller for use and maintenance of county roads and also on commissions for the amount of revenue received from the State under the Hall Income Tax Law. These were county funds received by the trustee from collecting officers of the State.

Referring to the assignment of error upon the action of the chancellor in refusing to allow defendant Miner credit for the hundred dollars attorney's fee, we are of opinion that this obligation was incurred by a county official acting in his own behalf. The litigation for which the fee was incurred arose out of the trustee's

negligent act in leaving with the People's Bank of Bull's Gap collateral given him to secure his deposits of county revenue. When he received the collateral, it should have been retained in his possession, but instead he left it on deposit in the bank. When the bank failed, the receiver refused to surrender the collateral, and the defendant Miner recovered it in a suit filed for that purpose.

By the fifth assignment of error on behalf of defendant Miner, he complains of the action of the chancellor in refusing to allow premiums paid by him to the surety on his official bond. The provision of the fee bill, Code section 10736, upon which he relies to support his insistence, was construed in *Jellicorse* v. *Russell,* 156 Tenn., 411, 1 S. W. (2d), 1011, where it was held that the payment of premiums was allowable only out of the excess of fees over the maximum salary. In construing the act, the Court ruled that if the fees did not exceed the maximum salary the premium could not be charged against the county.

The penalty of two per cent per month, amounting to sixty per cent gross, charged against the defendant Miner, was not allowable under the facts of this case. As stated, in discussing complainant's assignments of error, there was a difference of opinion over the commissions properly allowable to the trustee, and until that controversy was settled the question of whether or not the defendant had accounted for revenue in his hands was not known to either party. The penalty could only be applied after ascertainment of the amount due from the trustee, and in such circumstances this drastic penalty ought not be applied by a court of equity. *East Tennessee Brewing Co.* v. *Currier,* 126 Tenn., 535, 551, 150 S. W., 541.

The foregoing disposition of the assignments of error by defendant Miner disposes of questions raised by assignments of error of defendant American Surety Company, except those raising the question as to the action of the chancellor in holding it liable for the ten per cent penalty imposed by Code section 1835 and in allowing a ten per cent attorney's fee on the amount of the recovery. Until the amount of the delinquency is ascertained by settlement of the controversy, a penalty would not attach under either Code section 1835 or Code section 1635. The amount chargeable against the trustee not being known would afford no basis for a demand against the surety, or, for that matter, against the trustee, upon which to rest the penalty.

The decree of the chancellor is modified in conformity with this opinion and the cause remanded for a restatement of the account between the county and defendant Miner in which a commission of one per cent will be allowed on the amounts received and paid out on account of the county aid funds for maintenance of roads and on account of the county's share of the income tax received and paid out. The two per cent a month penalty and the attorney's fee of ten per cent will be applied from the date of the final decree, after remand, definitely fixing the balance in the hands of the trustee. The penalty and the attorney's fee will be based upon the amount found by a recasting of the settlement in conformity with this opinion.

The costs of appeal will be paid one half by the county and one half by the defendants. The costs of the trial court may be adjudged according to the discretion of the chancellor.

Modified and remanded.