LARUE *v.* ANDERSON COUNTY *et al.*

(*Knoxville,* September Term, 1952.)

Opinion filed December 5, 1952.

CLYDE W. KEY, of Knoxville, and J. M. UNDERWOOD, of Clinton, for complainant.

SAM K. CARSON, County Attorney, SIDNEY DAVIS and W. B. LEWALLEN, both of Clinton, for Anderson County and J. D. YARNELL, County Judge.

S. FRANK FOWLER, of Knoxville, for Anderson County School Board.

HOLMES BALDRIDGE, Assistant Attorney General, Washington, D. C., and OTTO AULT, U. S. District Attorney, of Knoxville, for United States, Amicus Curiae.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Pursuant to a contract between the Atomic Energy Commission and the Anderson County Board of Education, the United States Government has paid annually commencing in 1947 about $2,000,000 for the operation and maintenance of a school system at Oak Ridge in buildings constructed and owned by the United States Government. The Board of Education in turn paid this over to the trustee of Anderson County. The trustee kept this money in a special account ummingled with other funds, and disbursed it upon the warrants of the Board

of Education for salaries, expenses, etc., incurred in the maintenance and operation of these schools at Oak Ridge. No funds, other than a few small items not material here, were used in the maintenance and operation of these schools.

This lawsuit results from the fact that Anderson County, as distinguished from its Board of Education, insists that under the provisions of Code Section 1621 the trustee is entitled to a commission of one (1%) percent for the handling of these funds. The commissions involved amount now to about $117,000. The maximum salary allowed the trustee under the salary law has been received by him from other commissions without taking into consideration any of this $117,000.

If Anderson County is correct in its position, this $117,000 passes to the county as excess fees, and hence as county revenue for any or all the uses to which county revenue may be put. Code Section 10730. The result would be that Anderson County will receive from the United States Government for general county purposes the sum of $117,000 for the period specified because of the fact that the United States Government through its Atomic Energy Commission deemed it desirable to pay all the costs, which otherwise Anderson County would have to pay in the maintenance and operation of a school system at Oak Ridge. Considering the fact that county officials cannot forego the collection of any moneys to which the county is legally entitled, regardless of the lack of equity in a particular situation, it is quite likely that the Anderson County officials have taken the position stated in this case out of an abundance of caution in the performance of their official duties.

It may be observed here that the United States Government is the owner of many thousand acres of land at Oak Ridge and by reason of its well known activities there about half of the population of Anderson County is concentrated in unincorporated Oak Ridge. It was because of this situation that the Atomic Energy Commission deemed it desirable to thus arrange for, and to defray, the expenses of the maintenance and operation of a school system at Oak Ridge.

The Anderson County Board of Education insists that the funds thus received from the United States Government and paid over to the trustee are not funds upon which the trustee is authorized to charge a commission. If the Board be correct, this $117,000 will be retained as a part of the school fund to be used, as intended by the contracting parties, for the maintenance and operation of schools at Oak Ridge.

The County Trustee did not know what to do about this controversy between Anderson County, on the one hand, and its Board of Education on the other, with reference to the disposition of this $117,000, which likewise has been kept by him in a special fund. In this situation he properly interpleaded the County and its Board of Education.

The Chancellor, in a very excellent opinion, which it may be we would do better to adopt verbatim instead of writing an opinion of our own, held that these funds so received and disbursed by the county trustee were not funds for the handling of which the trustee was authorized to collect a commission; hence, that the $117,000 in question remain funds for the use, maintenance and operation of a public school system at Oak Ridge. Anderson County has appealed.

The moneys for which the trustee is entitled to a one (1%) percent commission for receiving and disbursing are those collected "from county officers on fees and on the school fund received from the state or on money turned over to him by clerks of the courts and other collecting officers". Code Section 1621. The moneys involved here were not fees received from county officers or school funds received from the State or money turned over to the trustee by clerks of the courts. County Boards of Education are not, of course, "collecting officers" of the State or County.

It would seem to follow without the necessity of further discussion that the trustee is not entitled to a commission from these funds turned over to the County Board of Education by the United States for a specific purpose, and by that Board paid over to the trustee for disbursement in the carrying out of that purpose. Code Section 10655 provides that "No officer is allowed to demand or receive fees or other compensation for any service further than is expressly provided by law."

The brief of Anderson County Board of Education and the amicus curiae brief of the United States refer to the case of *State* v. *Miner,* 176 Tenn. 158, 138 S. W. (2d) 766, as conclusively supporting the insistence of the Board and of the United States.

The question involved in the Miner case was whether the trustee was entitled to a commission for handling funds received from the State for the purpose of relieving counties from obligations incurred by counties in the building of highways appropriated and used by the State in its connecting system of roads. The Court held that Code Section 1621 did not authorize the collection of a

commission by a trustee for the handling of this fund, and in so holding said:

"It cannot be implied from these provisions that the state fund appropriated to relieve the counties of obligations assumed by the state and placed under control of the county court clerk, the county trustee, and county judge, as trustees for the fund, falls within the classification of county funds upon which the trustee may be allowed a commission for receiving and disbursing county revenue. This conclusion results from the fact that commissions allowable to the trustee are upon county revenue received and disbursed by him. A commission cannot be extended by implication to state revenue entrusted to the county for use in payment of the county's obligations assumed by the state." 176 Tenn. at page 167, 138 S. W. (2d) at page 769.

It is all the more true that a commission cannot be extended by implication into funds of the United States Government entrusted to the County Board of Education and, through it, to the trustee for use in payment of the county's obligation voluntarily assumed by the United States with reference to the maintenance and operation of a public school system at Oak Ridge.

Other reasons for the conclusions just stated are urged upon us by the Board and by the United States. Since that said above is conclusive of the question it becomes unnecessary to consider these further insistences.

The Chancellor allowed a fee of $1500 to the attorneys who filed for the county trustee the bill of interpleader. He ordered its payment out of the fund with which the bill of interpleader is concerned. The Anderson County Board of Education has no disagreement

with the Chancellor either as to amount allowed or by reason of the fact that the order directed its payment out of this fund. It does insist, however, that the Chancellor erred in failing to give to it, the Board, a judgment over against Anderson County for this $1500, and, in furtherance of that insistence, has filed its petition for writ of error.

It is recognized by the Board that these attorneys are entitled to be paid either by the county or out of this fund for their services in the filing of this bill of interpleader. The Board seems to further recognize that the County Trustee ought not to be required to personally pay it, in that he filed the bill in good faith, and as a matter of necessity, for the purpose of ascertaining who is entitled to the fund. The Board does insist, however, that the burden of paying this fee should be borne by Anderson County because it was the unsuccessful claimant. The brief filed in its behalf correctly says "that the circumstances of each particular case probably control the decision".

The unsuccessful claimant here, the county, is not, of course, an individual. It is a governmental entity represented by its public officials. It is the duty of such officials to be as sure as they can as to whether any particular fund over which a question arises is, or is not, the property of the county. Viewed in this aspect, it must be concluded that the county acted in good faith and not without cause in asserting a claim to this fund.

Moreover, there is no authority, in so far as we are aware, to hold the county liable for the attorneys' fee of an opposing litigant. "If there is no authority to hold the county for any particular item of cost or expense, the courts must arrest any proceeding for that purpose, even

if prosecuted by consent." *Holtzclaw* v. *Hamilton County,* 101 Tenn. 338, 341, 47 S. W. 421.

█ Probably we should observe that the Chancellor, in requiring that this fee be paid out of the funds involved in the interpleader, did not do violence to the rule stated in *State* v. *True,* 116 Tenn. 294, 314-316, 95 S. W. 1028. In that case it was proposed to pay an attorney's fee out of school funds derived from taxation for services rendered by unauthorized employment of an attorney to represent the Board. In the instant case the Board and the county trustee are acting as trustees for funds voluntarily entrusted to them for the purposes specified by a contract with the United States Government. In order to protect that fund, and thereby prevent it from being diverted from the purposes intended by the trust, this suit was necessary. Equity, as well as law, we think, supports the conclusion that this fee be paid out of the fund so protected and preserved. For the principle stated, compare *Inter-Southern Life Insurance Co.* v. *McDaniel,* 159 Tenn. 478, 19 S. W. 269.

The decree of the Chancellor will be affirmed. All costs of the appeal will be adjudged against the appellant, Anderson County, with the exception of the costs incident to the writ of error prosecuted by the Board. That cost will be adjudged against the Board to be paid out of the fund involved.