CITY OF OAK RIDGE et al., Appellants,

*v.*

JOE MORGAN, Commissioner of the Tennessee State
Department of Education, et al., Appellees.

381 S.W.2d 901.

(*Nashville,* December Term, 1963.)

Opinion filed September 4, 1964.

562

LUTHER M. REED, Oak Ridge, JACKSON C. KRAMER, R. R. KRAMER, Knoxville, KRAMER, DYE, GREENWOOD, JOHNSON & RAYSON, Knoxville, of counsel, for appellants.

GEORGE F. McCANLESS, Attorney General, J. MALCOLM SHULL, Assistant Attorney General, for Joe Morgan, Commissioner.

HARRY L. LILLARD, County Attorney, Anderson County, Oak Ridge, S. FRANK FOWLER, Knoxville, for Anderson County et al., intervenors.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This appeal presents for determination the question of when the Oak Ridge School System first became entitled to share in State funds appropriated by the Legislature for educational purposes. The Chancellor held that these schools were not entitled to share in the funds appropriated by the Legislature in February 1959 by the 1959 General Education Act (Chapter 14, Public Acts 1959). An appeal from this decree has been perfected to this Court.

The appellants, the City of Oak Ridge, its Mayor and the Oak Ridge Board of Education, filed the original bill in this cause against the Commissioner of Education of Tennessee and the Attorney General of Tennessee, praying for a declaratory judgment as to the validity and application of Section 17 of Chapter 14, Public Acts of 1959 and for an alternative writ of mandamus requiring the State Commissioner of Education to distribute to the complainants the ''correct allocation or proportion of the State School Funds appropriated by Chapter 14

of the Public Acts of 1959 for the period subsequent to January 1, 1960 without regard to the provisions of Section 17 of said Act'' or show cause why he should not do so. The bill also prays ''that a preemptory writ of mandamus issue'' following the hearing.

The defendants answered the bill, denying the asserted invalidity of Section 17, Chapter 14, Public Acts of 1959 and denying complainants' right to share in the funds appropriated by that Act. Anderson County and certain officials of Anderson County filed a petition to intervene in the cause as parties defendant, which petition was granted by the Court. These defendants adopted the answer filed by the original defendants in the cause.

Stipulations of the parties containing numerous exhibits, the deposition of the defendant Morgan, the deposition of the Coordinator of the Division of Finance and Field Service of the Tennessee Department of Education, and the deposition of the Superintendent of Schools of Anderson County, are contained in the record.

In his opinion, the Chancellor stated:

''The Court is of the opinion that the Oak Ridge School System was not a part of the public school system of the State of Tennessee while it was operated by the Anderson County Board of Education under its contract with the Atomic Energy Commission; that Sec. 17 of Chapter 14 of the Public Acts of 1959 is valid and that there is no law which permits the school system of the City of Oak Ridge, which did not come into existence as such until January 1, 1960, to participate in the biennium appropriations of the General Educational Act of 1959 for the years beginning July 1, 1959 and July 1, 1960.''

Appellants' second assignment of error is that the Chancellor erred in holding that the Oak Ridge School System was not a part of the Public School System of the State of Tennessee while it was operated by the Anderson County Board of Education under its contract with the Atomic Energy Commission.

The erection and operation of the atomic energy plant at Oak Ridge during World War II created a unique situation in this State. The Federal Government acquired title to approximately 56,000 acres of land prior to January 1944 and within that area erected atomic energy plants and facilities and a large community, complete with residences, shops, theaters, utilities, a hospital and public school facilities, all wholly owned by the Government. For a number of years this entire area was designated as a security area, with both ingress and egress controlled by the Government. Following the passage of the Atomic Energy Act of 1946, 42 U.S.C.A. sec. 2011 et seq., all of the facilities of Oak Ridge, including the school properties, were transferred to the Atomic Energy Commission.

In August 1955 Congress passed the Atomic Energy Communities Act, 42 U.S.C.A. sec. 2301 et seq., the purpose of which is stated as follows:

"It is declared to be the policy of the United States of America that Government ownership and management of the communities owned by the Atomic Energy Commission shall be terminated in an expeditious manner which is consistent with and will not impede the accomplishment of the purposes and programs established by the Atomic Energy Act of 1954. To that end, it is desired at each community to—

"(a) facilitate the establishment of local self-government;

"(b) provide for the orderly transfer to local entities of municipal functions, municipal installations, and utilities; and

"(c) provide for the orderly sale to private purchasers of property within those communities with a minimum of dislocation."

Under the provisions of this statute, the Atomic Energy Commission is authorized to cooperate with and assist the residents of the community in preparation for and establishment of local self-government and to transfer municipal installations and responsibilities to local entities without charge to the entity receiving municipal installations. By definition, "municipal installations" expressly includes schools. This statute further provides:

"From the date of transfer of any municipal installations to a governmental or other entity at or for the community, the Commission shall, for a period of ten years, make annual assistance payments of just and reasonable sums to the State, county, or local entity having jurisdiction to collect property taxes or to the entity receiving the installation transferred hereunder." 42 U.S.C.A. sec. 2391.

The City of Oak Ridge was incorporated as a municipality under the laws of the State of Tennessee on June 16, 1959. Pursuant to the authority granted by the Atomic Energy Communities Act, the Government through the Atomic Energy Commission entered into a "Financial Assistance Contract" with the City of Oak

Ridge on December 15, 1959 and on December 31, 1959 conveyed and transferred the Oak Ridge School System to the City of Oak Ridge. Under the terms of the Financial Assistance Contract, the City obligated itself to secure all tax contributions to which it was entitled. The Atomic Energy Commission has continued to make payments to the City under this contract. It has, however, advised the City that it would take credit for all tax contributions the City received from the State School Fund for the period January 1, 1960 to June 30, 1961.

From its inception until January 1, 1960, the Oak Ridge School System was operated under contracts between the Federal Government and its agencies and the Anderson County Board of Education.

The contract between the United States, acting through its Contracting Officer, P. F. Kromer, Jr., a Colonel in the Corps of Engineers, and the Anderson County Board of Education, dated August 14, 1946, together with all modifications thereof, is made an exhibit in the cause. Modification 1 of this contract, executed April 11, 1947, provides, under the heading STATEMENT OF WORK:

"The Contractor (Anderson County Board of Education) shall, as required, furnish the personnel, materials, supplies, tools and equipment not furnished by the Government, and services and do all things necessary, to operate and maintain the schools and school system in Oak Ridge, Tennessee, including incidental or related community services, to the extent requested by and *subject to the supervision, direction and instructions of the Contracting Officer.*" (Emphasis supplied.)

This same modification, under the heading CON-TRACTING OFFICER'S DECISIONS, provides:

"The extent and character of the work to be done by the Contractor shall be subject to the general supervision, direction, control and approval of the Contracting Officer to whom the Contractor shall report and be responsible."

At all times, the concurrence of the Contracting Officer in the appointment of a superintendent of schools for the Oak Ridge system was required. Further, by Modification 1, this contract provides:

"No persons shall.be assigned to service by the Contractor as superintendent, principal or teacher or similar position in the Contractor's field organization, or as principal assistant to any such person, until there has been submitted to and approved by the Contracting Officer a statement of the qualifications, experience, and salary of the person proposed for such assignment."

By its terms, the contract could be terminated at any time by the Government by notice in writing from the Contracting Officer to the Contractor.

Further, under this contract:

"The Superintendent of the Oak Ridge school system, and in his absence his designee, shall be deemed a duly appointed and qualified representative who shall receive and execute on the part of the Contractor such notices, directions, and instructions as the Contracting Officer may give."

Also, the Contracting Officer is given the right to require the Contractor to dismiss from work any employees that

the Contracting Officer deems incompetent, careless or insubordinate, or whose continued employment the Contracting Officer deems inimical to the public interest.

The Superintendent of Schools of Anderson County testified:

"Well, our Board, the Anderson County Board of Education, assumed absolutely no administrative or supervisory control of the personnel of the Oak Ridge School System. * * * In fact, we did not have any control over the teachers' selection or replacement."

The defendant Commissioner of Education testified that the State Department of Education exercised no more control over the Oak Ridge schools than over a private school.

The provisions of the contract between the Government and the Anderson County Board of Education, quoted and referred to above, demonstrate that, while this contract remained in force, the real control over the Oak Ridge schools remained in the Contracting Officer. By the express terms of the contract, all of the work undertaken by the Contractor, the Anderson County Board of Education, was subject to the supervision, direction and instructions of the Contracting Officer, the representative of the Federal Government, and there was reason for this to be true. The Federal Government was paying the entire cost of the construction and operation of this school system. It was necessary that the school system in Oak Ridge be of such caliber that Oak Ridge would be an attractive place for the finest scientists in our country to educate their children in order to attract and hold people of such attainments at the Oak Ridge Atomic Energy installations. Although the average daily attend-

ance of pupils in the Anderson County schools slightly outnumbered that of the Oak Ridge schools, the cost of operating the Oak Ridge schools was considerably more. Certainly, it was necessary and proper for the Federal Government to retain the supervision and direction of the operation of these schools. For these same reasons the Atomic Energy Communities Act provides for financial assistance to these schools for a period of ten years after their transfer to local government.

Each two years from 1947 to 1959 the Tennessee Legislature appropriated funds for the public schools of this State. The representatives of the United States Government at Oak Ridge never sought from the State of Tennessee any part of the appropriations provided by these statutes for any period of time prior to January 1, 1960.

As early as September 1944, the office of the Attorney General of Tennessee, in an opinion by the Honorable Nat Tipton, Assistant Attorney General, stated that the status of the Oak Ridge schools "has been that of a private school financed with Federal funds and using the County Board of Education of Anderson County as a medium for its operation."

It is contended by the appellants that certain language used by this Court in *Larue v. Anderson County*, 194 Tenn. 525, 253 S.W.2d 736, recognized an obligation on the part of Anderson County to the Oak Ridge schools. In the Larue case, the Court held that the County Trustee of Anderson County was not entitled to receive a commission on funds paid by the Federal Government for the operation of the Oak Ridge schools which went through the Trustee's hands. The statute, now T.C.A. sec. 67-1412, provides that the Trustee is entitled to a

one percent (1%) commission for receiving and disbursing funds collected "from county officers on fees and on the school fund received from the state or on money turned over to him by clerks of the courts and other collecting officers." The funds paid by the Federal Government for the operation of the Oak Ridge schools were held by the Court not to come within the provisions of the statute. There is nothing in the opinion in the Larue case to indicate that the contract between the United States and the Anderson County Board of Education was even in the record in that case.

In *National Life & Accident Insurance Co. v. Eddings,* 188 Tenn. 512, 523, 221 S.W.2d 695, 699, it is stated:

"It is a maxim not to be disregarded that general expressions, in every opinion are to be taken in connection with the case in which those expressions are used."

This maxim is applicable here. The Larue case is not authority for the contention that the Oak Ridge schools were a part of the public school system of the State of Tennessee.

▮ We concur in the finding of the Chancellor that the Oak Ridge School System was not a part of the public school system of the State of Tennessee while it was operated under the contract between the Anderson County Board of Education and the Atomic Energy Commission. Assignment of error number two is overruled.

By assignment of error number one it is stated that the Chancellor erred in failing to hold that Section 17 of the General Education Act of 1959 and the proviso contained therein have no application to the Oak Ridge School System.

Since the validity and proper construction of Section 17, Chapter 14, Public Acts of 1959 lie at the heart of this controversy, we quote Section 17 in its entirety:

"Section 17. *B it further enacted,* That if as of July 1 of any school year there has been a change since the beginning of the previous school term in the boundaries of a city, or special school district and/or the creation or reactivation of a city, or special district school system involving the shift of pupils from one school system to another, then, and in that event, in the distribution of any funds appropriated by this Act, whether for current operation and maintenance, capital outlay, textbooks, or otherwise, to a county having within its boundaries any such city, or special school district operating a system of public schools, grades one through twelve, the following shall apply:

"The State Commissioner of Education shall determine on the basis of information submitted to him by the appropriate boards of education, the average daily attendance of pupils residing in such affected area and the number of teaching positions, if any, involved in such shift, and shall make such adjustments in the pupil average daily attendance and/or the number of teaching positions as may be necessary to effectuate an equitable distribution and division of funds as between the county and any city, or special school district operating a system of public schools therein, and such adjusted pupil average daily attendance and/or teaching positions shall be used in making the apportionment and distribution of any funds appropriated by this Act, whether for current operation and maintenance, capital outlay, textbooks, or otherwise;

provided, however, that before any school system which is reactivated or newly created after July 1, 1958, shall participate in the apportionment of any State school funds, or share in the apportionment of any county school funds during any biennium, the chief fiscal agent of the county, city, or special district in which said school system is located, shall certify to the State Commissioner of Education on or before March 1 preceding the pertinent biennium that such county, city, or special school district has met all requirements for participation in State school funds, and furthermore such certification shall be accompanied by such evidences of compliance as the State Commissioner of Education may require.''

In their brief, appellants contend that this Section does not apply to the Oak Ridge School System. The first paragraph of that Section and the second paragraph down to the proviso deal only with situations involving the shift of pupils from one school system to another within the public school system of the State. Appellants point out that ''the average daily attendance of Oak Ridge pupils and the number of Oak Ridge teaching positions were never applied and used during any portion of the fifteen-year period of Anderson County operation of the schools at Oak Ridge in the computation of Anderson County's allocation of State school funds.'' Therefore, they say, the operation of the Oak Ridge schools, beginning January 1, 1960, by the Oak Ridge Board of Education did not result in adjustment upward or downward in the pupil average daily attendance and the number of teaching positions of the Anderson County schools for the purpose of allocation of State school funds, and no division of State school funds was called

for between the two systems. Appellants then contend that the proviso contained in Section 17 relates only to the provisions of this same section and not to other sections of the Act and, therefore, none of Section 17 is applicable to the Oak Ridge School System.

Following this same argument, by assignment of error number three, the appellants state:

"The Proviso contained in Section 17 of the General Education Act of 1959 is repugnant to the remainder of that section of the Act and also to the general purposes of the Act as a whole. Hence this Proviso is void and unenforceable. Therefore, this Proviso should be elided from the Act and the Chancellor erred in failing to so hold."

In support of their contention that the proviso in Section 17 relates only to that section, appellants cite 50 Am.Jur., Statutes, Section 438, Page 459. In the latter part of that section, it is stated:

"However, the presumption that a proviso refers only to the section of provision to which it is appended cannot prevail to determine the intention of the legislature against other tests of meaning more demonstrative; the proviso should be given a broader application where that is clearly the legislative intent. A proviso may even relate to an act as a whole when it is clear from the terms of the act that such was the legislative intent."

While this Section down to the proviso relates to changes involving the shift of pupils from one school system to another, the proviso relates to *"any school system* which is reactivated or newly created after July

1, 1958''. (Emphasis supplied.) This Section, outside of the proviso, does not contemplate the admission of new pupils or new claimants upon State funds already appropriated but merely provides a method of handling the reallocation of funds between school systems following a shift of pupils and teachers from one system in the State school system to another. The proviso in Section 17 fixes the requirements for the admission of a new school system into the public school system of this State, which necessarily entails the appropriation of additional funds for such new school system.

The basic purpose of the Education Act of 1959 is stated in Section 2 to be to appropriate funds for the ''current operation and maintenance of the public schools of this State''.

By the terms of Section 40 of this Act, it is to be construed in *pari materia* with T.C.A. sec. 9-601 to 9-612, which relate to the State budget and appropriations and provide that the State budget ''shall present a complete, financial plan for each fiscal year of the ensuing biennium''. By Section 5 of the General Education Act of 1959, the amount of funds which each equalizing county (Anderson County was an equalizing county) shall raise from local sources is determined pursuant to formulae set forth in the Act on the basis of data available to the State Commissioner of Education on March 1 preceding the beginning of the next biennium. This is the same date on which the proviso in Section 17 requires a newly created school system to certify to the Commissioner that it has met all requirements for participation in State school funds.

■■ In many cases this Court has recognized and applied the following rules of statutory construction:

"The whole purpose of statutory interpretation is to ascertain and give effect to the legislative intent; and all rules of construction are but aids to this end." *Anderson v. Outland,* 210 Tenn. 526, 532, 360 S.W.2d 44, 47. See also *Southern v. Beeler,* 183 Tenn. 272, 288, 195 S.W.2d 857.

"Effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and lean in favor of the construction which will render every word operative, rather than one which may make some idle and nugatory." *Tiger Creek Bus Line v. Tiger Creek Transportation Association, Inc.,* 187 Tenn. 654, 661, 216 S.W.2d 348, 351. (quoted with approval from Cooley's Const. Lim., Pages 57, 58) See also *Scales v. State,* 181 Tenn. 440, 443, 181 S.W.2d 621.

Applying these rules of construction to the General Education Act of 1959, it clearly appears that the part of Section 17 which precedes the proviso relates only to shifts of pupils and teachers from one school system to another within the State school system and the reallocation of funds between school systems which were already a part of the public schools of this State for which money was being appropriated.

The proviso in Section 17 deals with any newly created school system created after July 1, 1958 and sets forth the requirements that shall be met by such newly created school system if it is to share in the funds being appropriated by the Act. July 1st of each year is early enough

to determine the reallocation of funds between school systems for which appropriations have been made. Where a new school system is added to the public schools of this State, requiring the appropriation of additional funds for such system, the proviso requires that system to certify to the State Commissioner of Education before March 1st preceding the pertinent biennium that it has met the requirement for participation in State school funds.

It is well known that the Tennessee Legislature adjourns around the middle of March in the years in which it meets in regular session. The requirement placed by the proviso on newly created school systems is consistent with sound fiscal planning, as is required by T.C.A. sec. 9-601 et seq., for it allows the Legislature an opportunity to make a supplemental appropriation to take care of the additional financial needs of the Department of Education caused by a new school system becoming a part of the public schools of our State.

The Oak Ridge School System has approximately 6,000 pupils. It is estimated that the State's contribution to this school system under the General Education Act of 1959 from the period of January 1, 1960 to July 1, 1961, if it is entitled to share in these funds, would amount to $1,562,037.00.

The requirements of the proviso are not unreasonable when applied to a new school system making substantial demands upon the funds of the State for educational purposes.

The construction of Section 17 contended for by the appellants creates an inconsistency between the provisions of Section 17 outside of the proviso and the pro-

visions contained in the proviso. As we construe the Act, there is no such inconsistency and effect is given to the entire Section.

▇ Assignments of error numbers one and three are overruled.

By the fourth assignment of error, appellants assert:

"If the proviso contained in Section 17 of the Act here in question is not elided from the Act, said proviso and Section 17 are unconstitutional and the Chancellor erred in failing to so hold, because:

"(1) It is so vague and indefinite that it violates Article 1, Section 8, and Article 11, Section 8, of the Constitution of Tennessee and the 14th Amendment to the Constitution of the United States.

"(2) It constitutes arbitrary discriminatory class legislation, and, therefore, is violative of Article 11, Section 8, of the Constitution of Tennessee and the 14th Amendment to the Constitution of the United States."

We do not find the requirement of the proviso in Section 17 that a newly created school system shall certify on or before March 1st preceding the pertinent biennium that it has met all requirements for participation in school funds to be vague and indefinite. There are a number of statutes which spell out the details of the administration of the public schools of this State. Some of these are T.C.A. sec. 49-101 et seq., establishing the system of public education and providing that the system shall be administered by the Commissioner of Education, the State Board of Education, the county superintendents, and county and city boards of education.

T.C.A. sec. 49-108 requires the State Board to prescribe rules and regulations for the approval and classification of all public schools; to make regulations for their government and to prescribe curricula and to approve courses of study adopted by county, city and special school district boards. T.C.A. sec. 49-601 provides for a State school fund which shall be administered and distributed in accordance with the provisions of the applicable General Education Act. It was not necessary for the Legislature to refer to these statutes in the proviso in Section 17.

As applied to the situation presented by this record, it is our opinion that the proviso in Section 17 does not constitute arbitrary class legislation. As we have heretofore pointed out, the ownership and operation of the Oak Ridge community by the United States Government created a unique situation in this State. As the Government transferred municipal installations and responsibilities to local entities in accordance with the Atomic Energy Communities Act, there was, of necessity, some lag between the transfer of the responsibilities and installations and the collection of taxes by the newly created local government. When the 1959 General Education Act was passed in February 1959 the City of Oak Ridge did not exist and the Oak Ridge schools were not a part of the public schools of this State, as we have held. It was not incumbent upon the Legislature to appropriate funds for a school system that might not come into existence during the biennium. The Oak Ridge School System is not treated differently in the proviso in Section 17 from any other newly created system becoming a part of the public schools of this State. The efficient and proper budgeting of public funds requires that knowl-

edge of the amounts needed to be appropriated be furnished to proper officials before the Legislature is called upon to make such appropriations.

Assignment of error number five is:

"The Chancellor erred in holding that there is no statute which permits the school system of the City of Oak Ridge to participate, for the period beginning January 1, 1960, and ending June 30, 1961, in the biennial appropriations of school funds made by the General Education Act of 1959."

■ This assignment of error is based upon the assumption that Section 17 of Chapter 14 of the Public Acts of 1959 and the proviso in Section 17 have no application to the Oak Ridge School System. Since we have held the proviso in Section 17 valid and applicable to the Oak Ridge School System, it is unnecessary to discuss this assignment.

It results that all of the assignments of error are overruled, and the judgment of the Chancery Court of Davidson County is in all things affirmed.