# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

# FILED

December 17, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ADOPTION OF HEATHER | ) | |
| CHRISTINE HATCHER, a child | ) | |
| under the age of eighteen (18) years, | ) | |
| | ) | |
| JAMES HATCHER and | ) | Appeal No. |
| VELMA CHRISTINE HATCHER | ) | M1999-01843-COA-R7-CV |
| | ) | |
| Plaintiffs/Appellants, | ) | Dickson Juvenile |
| | ) | |
| VS. | ) | |
| | ) | |
| HEATHER PATTERSON, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

## APPEALED FROM THE JUVENILE COURT OF DICKSON COUNTY
## AT CHARLOTTE, TENNESSEE

### THE HONORABLE A. ANDREW JACKSON, JUDGE

WILLIAM H. FARMER
STEPHEN A. COBB
PAULA A. FLOWERS
511 Union Street, Suite 2100
Nashville, Tennessee 37219-8966
    Attorneys for Plaintiffs/Appellants

JACK L. GARTON
110 Mathis Drive
Dickson, Tennessee 37056-0190

Attorney for Defendant/Appellee

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

## **O P I N I O N**

Fifteen months after granting the adoption of an infant child, the Juvenile Court of Dickson County voided the adoption for a host of substantive and procedural problems – including the subject matter jurisdiction of the court and the failure of the biological mother to sign the surrender. The adopting parents urge us to hold that Tenn. Code Ann. § 36-1-122(b)(1) cures all defects in the former proceeding after the adoption order becomes final. We reject that contention, but hold that the biological mother effectively surrendered the child. We therefore affirm the lower court's order setting the adoption aside, but we reverse the order returning custody of the child to the biological mother.

**I.**

Heather Patterson, a pregnant unwed teenager, sought a couple to whom she could surrender the baby for adoption. Through mutual friends she was introduced to James and Christine Hatcher of Waverly. She visited the Hatchers

with her parents, and kept in touch with them by telephone. At some point she told the Hatchers that she wanted them to adopt the baby when it was born.

Mr. and Mrs. Hatcher had talked about adopting a child, and upon becoming acquainted with Ms. Patterson and her family, they agreed to adopt the child when they were asked to do so. In the fall of 1997, they contacted the licensed pregnancy and counseling service that was providing services to Ms. Patterson and asked the agency to conduct the home study required for them to adopt the child. The agency agreed, and scheduled an interview with the Hatchers in early January of 1998.

In the meantime, the Hatchers' relationship with Ms. Patterson continued to develop. They took her to some of her medical appointments, and spent some time with her at Christmas in 1997. They were present when the baby was born on February 6, 1998, and they took the baby home with them when she was released from the hospital on February 14, 1998.

The Hatchers hired a lawyer to assist them with the adoption, but for some reason not explained in the record, the legal system completely failed the Hatchers in their attempt. The lawyer apparently drew up a petition for adoption, the surrender forms for the mother and the adopting parents, a waiver of interest of the putative father, and a final order of adoption. Then he sent the Hatchers by themselves to get the court's approval for the adoption, ignoring all the procedural

steps usually required.

The petition is addressed to the Chancery Court of Dickson County and the final order directs the "Clerk and Master to complete the forms necessary for the state to issue a new birth certificate for the child." The signature line, however, refers to the Juvenile Judge of Dickson County by name and title. Whether a petition was ever filed in the Chancery Court is still a mystery. In this record the word "Chancery" is marked out of the petition and the word "Juvenile" is written in. Why the juvenile judge accepted the petition and signed the order of adoption is not explained in the record either.

The Hatchers executed the petition for adoption on February 12, 1998. The petition contained the following two paragraphs:

> 8. Petitioners would state that there has been full compliance with the law in regards to the surrender of the child to your Petitioners and that all parties' pursuant to law have received a copy [of] said surrender.
>
> 9. Petitioners would state that the biological mother has given her consent and does hereby execute this Petition for Adoption further evidencing her consent and that she is under no undue influence and that no consideration has been given to them for the purposes of agreeing to said adoption. Petitioners would further state that the biological mother understands that the entry of an Order confirming the parental consent, without revoking the parental consent prior to the entry of such an Order would terminate that parents parental rights to the child forever and that the parents will have no legal rights to the custody, or control of the child in the future. Further Petitioners would state that the biological father has signed

a Waiver of Interest.

Ms. Patterson executed the petition under oath before the juvenile judge of Dickson County on March 4, 1998.  The oath she took states that "she has read the foregoing Petition for Adoption and that the facts set forth herein are true to the best of her knowledge, information and belief . . . ."

The record contains the filled-out forms for the surrender of the child directly to the adoptive parents, but the forms are not signed by the Hatchers nor by Ms. Patterson.  The executed Waiver of Interest by the putative father is in the record.

The final order of adoption recites that it came on to be heard on the petition and, among other things, upon the "surrender of a child by the natural parents directly to the adoptive parents."  The order was signed by the juvenile judge and dated March 11, 1998.  The order in this record does not contain any information about where or when it was filed in the records of the juvenile clerk.  No one has offered an explanation why the petition is stamped filed by the juvenile clerk on April 3, 1998 – three weeks after the juvenile judge signed the order of adoption.

On February 16, 1999, Ms. Patterson filed a petition to set aside the adoption because "this court lacks jurisdiction to grant an adoption, that no home study was ever completed, and that no surrender and acceptance was executed."

At a hearing on June 30, 1999, the court heard only an argument about the legal issues involved. Apparently convinced that the adoption order was fatally defective, the court ordered the adoption set aside and the child returned to Ms. Patterson the next day. The court did not inquire about Ms. Patterson's parental fitness or the effect that such an abrupt change of custody would have on the child, her biological mother, or the adoptive parents. We stayed the June 30 order and directed the parties to work out a mutually acceptable visitation plan for Ms. Patterson.

## II.

The Hatchers do not assert on appeal that the Juvenile Court of Dickson County had subject matter jurisdiction over adoptions or that the proceedings in that court conformed to the statutory requirements for adoptions. They also concede that a judgment rendered by a court without subject matter jurisdiction is void, *see New River Lumber Co. v. Tennessee Ry. Co.*, 210 S.W. 639 (Tenn. 1919), and that subject matter jurisdiction cannot be conferred by waiver or consent, *see Riden v. Snider*, 832 S.W.2d 341 (Tenn. Ct. App. 1991). Nevertheless, the Hatchers insist Tenn. Code Ann. § 36-1-122 (b)(1) prevents the parties to the adoption from raising the jurisdictional question after the order becomes final. That section provides:

> (b)(1) After the final order of adoption is entered, no
> party to an adoption proceeding, nor anyone claiming

under such party, may later question the validity of the adoption proceeding by reason of any defect or irregularity therein, jurisdictional or otherwise, but shall be fully bound by the order, except for such appeal as may be allowed by law.

If one reads Tenn. Code Ann. § 36-1-122(b)(1) literally and in isolation the Hatchers' contention has some merit. We think however that the statute should be read as a whole, because statutes similar in subject matter must be construed so as to make the legislative scheme operate in a consistent manner. *Davis v. Beeler*, 207 S.W.2d 343 (Tenn. 1948). Reading the Act as a whole, we note that subsection b(1) was part of the statute passed in 1951. *See* 1951 Tenn. Pub. Acts Ch. 202. In 1995 the legislature overhauled the adoption law, passing a seventy-four page bill that re-enacted portions of the prior law with new provisions tucked in at appropriate places. *See* 1995 Tenn. Pub. Acts Ch. 532. That Act added section (b)(2). Now the two sections stand adjacent to each other.

> (b)(1) After the final order of adoption is entered, no party to an adoption proceeding, nor anyone claiming under such party, may later question the validity of the adoption proceeding by reason of any defect or irregularity therein, jurisdictional or otherwise, but shall be fully bound by the order, except for such appeal as may be allowed by law.

> (b)(2) In no event, for any reason, shall an adoption be overturned by any court or collaterally attacked by any person or entity after one (1) year from the date of entry of the final order of adoption by a court of competent jurisdiction. This provision is intended as a statute of repose.

If subsection (b)(1) had the meaning for which the Hatchers contend,

then subsection (b)(2) would have been completely unnecessary – at least as to parties to the adoption. Under their version of (b)(1) parties could not attack the adoption order for any reason thirty-one days after the court signed it. Nevertheless, the legislature passed (b)(2) in 1995 saying that no <u>person</u> could launch a collateral attack on an adoption order signed "by a court of competent jurisdiction" after one year had passed. Under (b)(2), if the court does not have subject matter jurisdiction, the order may be attacked even beyond the one year period. This result is more consistent with the traditional view that a judgment rendered without subject matter jurisdiction may be attacked at any time. *See* 47 Am.Jur.2d *Judgments* § 838; *Hughes v. Aetna Casualty & Surety Company*, 383 P.2d 55 (Or. 1963). Earlier adoption cases in Tennessee stand for the same proposition. *See Crocker v. Balch*, 55 S.W. 307 (Tenn. 1900); *Redmond v. Wardrep*, 257 S.W. 394 (Tenn. 1923).

We cannot ignore the obvious intent of the legislature, *City of Oak Ridge v. Morgan*, 381 S.W.2d 901 (Tenn. 1964), but we should not interpret a statute in a way that leads to an absurd result. *Epstein v. State*, 366 S.W.2d 914 (Tenn. 1963). If we interpret section (b)(1) literally we would have to ignore section (b)(2), the more recent legislative enactment. We think the legislature would be startled to find that a court without subject matter jurisdiction (a traffic court, for instance) could nullify all the safeguards the legislature has built into the adoption statutes, and the adoption could not be set aside thirty-one days after the order was signed. Therefore, we hold that Tenn. Code Ann. § 36-1-122(b)(1) does not bar

an attack on an adoption order entered by a court lacking subject matter jurisdiction.[1]

The order of adoption entered by the Juvenile Court of Dickson County was, and is, a nullity.

## III.

We are satisfied, however, that Ms. Patterson effectively surrendered the child. The Juvenile Court of Dickson County does have jurisdiction to accept her surrender, Tenn. Code Ann. § 36-1-111(b), and Ms. Patterson did everything necessary to surrender the child except sign the surrender document. She selected the Hatchers as the persons she wished to adopt her child. She appeared in court before the juvenile judge and signed the adoption petition under oath. The petition alleged that "there has been full compliance with the law in regards to the surrender of the child . . . and that all parties pursuant to law have received a copy of said surrender." A copy of a formal surrender form is in the record although it is not signed by Ms. Patterson. The petition prayed for a final order of adoption by the Hatchers and alleged:

> 9. Petitioners would state that the biological mother has given her consent and does hereby execute this Petition for Adoption further evidencing her consent and that she is under no undue influence and that no

consideration has been given to them for the purposes of agreeing to said adoption. Petitioners would further state that the biological mother understands that the entry of an Order confirming the parental consent, without revoking the parental consent prior to the entry of such an Order would terminate that parents parental rights to the child forever and that the parents will have no legal rights to the custody, of control of the child in the future.

At oral argument counsel for Ms. Patterson conceded that Ms. Patterson intended to permit the Hatchers to adopt the child and that she has no basis to challenge the adoption other than the defects and oversights in the preparation and execution of the forms. Counsel also conceded that Ms. Patterson made the decision to surrender the child with full understanding of her options and the consequences of her decision. There is no evidence in the record that she felt any remorse about her decision or that she attempted to revoke her surrender within the time provided by Tenn. Code Ann. § 36-1-112 (1996).

Under all the circumstances, we are convinced that the proceedings in this case substantially complied with the statutory requirements for a valid surrender, *see Brown v. Raines*, 611 S.W.2d 594 (Tenn. Ct. App. 1980). Tenn. Code Ann. § 36-1-111(k)(1)(C)(i)(Supp. 1999) states that as an alternative to witnessing the mother's signature on the surrender form, the court may "witness the actual act of surrender . . . by questioning the parent on the matters required by this part before the entry of an order of confirmation of the parental consent." Ms. Patterson does not contend that the Juvenile Judge failed to ask the questions " required by this part," and as we have pointed out, she was knowledgeable about

and comfortable with her decision at the time of the surrender.

Undoubtedly other unfulfilled requirements lurk in the labyrinthine provisions of the adoption laws, but as a consequence of her surrender Ms. Patterson no longer has the standing to raise them.

We affirm the order below setting the adoption aside.  We reverse the order returning custody of the child to Ms. Patterson.  Tax the costs on appeal equally to Ms. Patterson and the Hatchers.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
WILLIAM B. CAIN, JUDGE

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

IN RE:        )
          )
ADOPTION OF HEATHER   )
CHRISTINE HATCHER, a child   )
under the age of eighteen (18) years,   )
          )
JAMES HATCHER and     )    Appeal No.
VELMA CHRISTINE HATCHER   )   01-A-01-9907-JV-00397
          )
   Plaintiffs/Appellants,    )    Dickson Juvenile
          )
VS.          )
          )
HEATHER PATTERSON,     )
          )
   Defendant/Appellee.    )

## J U D G M E N T

This cause came on to be heard upon the record on appeal from the Juvenile Court of Dickson County, briefs and argument of the parties; upon consideration whereof, we affirm that portion of the trial court's order setting the adoption aside and reverse that portion returning custody of the child to Ms. Patterson.

In accordance with the opinion of the Court filed herein, it is, therefore, ordered and adjudged by this Court that the order of the trial court is affirmed in part and reversed in part. The cause is remanded to the Juvenile Court of Dickson County for further proceedings consistent with the opinion and for the collection of the costs accrued below.

Costs of this appeal are taxed one-half against Mr. and Mrs. Hatcher and one-half against Ms. Patterson, for which execution may issue if necessary.

        _____
        BEN H. CANTRELL,
        PRESIDING JUDGE, M.S.

_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE