STATE OF TENNESSEE, FOR USE, ETC., *v.* J. CACYE ABERNATHY *et al.*

(*Nashville.* December Term, 1928.)

Opinion filed May 25, 1929.

JONES & WAGSTAFF, for appellants.

D. R. WADE, JR., and BENNETT ESLICK, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This bill is filed in the name of the State for the use of Giles County, and by Giles County, against defendant Abernathy, a former Trustee of that County, and the sureties on his bonds. The purpose is to surcharge and falsify certain settlements made by this defendant of

his accounts, and to recover a balance of something over five thousand dollars, which is alleged to have come into the hands of Abernathy as Trustee and was never paid over or properly accounted for.

The bill is voluminous, charging in substance that Abernathy was elected Trustee for a term of two years, from September 1, 1920, to August 31, 1922, and that he qualified and gave the various bonds set forth in the bill, copies of which are filed as exhibits, for the proper performance of his duties, with the other defendants, or the parties whom they represent, as sureties; and that he was re-elected for a succeeding term of two years. The amount sought to be recovered is an alleged balance which should have been in his hands at the expiration of his first term, and have come into his hands as his own successor upon the commencement of his second term.

The bill alleges various settlements made or attempted to be made by Abernathy with the County Court, of the County Judge, from time to time. It also shows that the accounts of the defendant Trustee for both his terms of office were audited at the expiration of his second term, and that one or more subsequent audits were had; and that after the last audit, and at the April term, 1925, of the Quarterly Court, a resolution was passed approving his accounts for his entire two terms of office, as shown by the reports of the auditors, and undertaking to release him and his bondsmen from any further liability to the County.

The bill goes into details of Abernathy's transactions and accounts with great elaboration. Commencing with the accounts of his first term, it undertakes to point out specifically the alleged errors in his various settlements with the County Court, and in the various audits of his

accounts, which were made at the instance of the County
Judge or the County Court; and various summaries of
his accounts are incorporated in the bill and the specific
items alleged to remain unpaid and which, according to
the allegations of the bill, were not taken into account,
or considered by the auditors, are set up in the bill. The
theory of the bill is that on account of these errors there
remained in the hands of Abernathy at the expiration
of his first term the sum above named over and above
the amounts shown by his settlements with the Court
and by the various audits; and recovery is sought against
him and his bondsmen for this amount, together with a
penalty of one per cent per month from the time when it
is alleged this balance should have been paid over by
Abernathy to the County, and an additional penalty of
fifteen per cent.

The defendants demurred to the bill, on eighteen
grounds; and an additional ground was afterward added
by permission of the Court. The Court sustained the first
and second grounds of demurrer, which deny the right
to recover the penalty of one per cent, and the com-
plainant apparently acquiesced in the Court's action in
this regard. The Court overruled all other grounds of
demurrer and allowed an appeal.

In this Court, the defendants rely on their demurrer,
except the first and second grounds thereof, which as
stated were sustained by the Chancellor, and have added
a general assignment to the effect that the Chancery
Court erred in overruling and not sustaining the demur-
rer in its entirety.

In their brief counsel submit four propositions as a
basis for reversal of the Chancellor's decree, and we
shall consider these in the order in which they are pre-
sented.

ESTOPPEL AND LACHES. Under this head it is contended that by the acceptance of the auditors' report and the approval thereof, and the release embodied in the resolution of any further liability against Abernathy and his sureties, the complainant County is estopped to further question Abernathy's accounts and settlements; and that, furthermore, the County has been guilty of such laches in asserting any objection to these settlements, and to its own action approving the report of the auditors and release of Abernathy and his bondsmen, that the bill should be dismissed on that ground.

■ (a) The resolution of the County Court at the April term, 1925, accepting and approving the report made by the auditors and undertaking to release Abernathy and his sureties, was not a judicial record such as would constitute *res adjudicata*. It probably did, however, have the force of a settled account and constitutes *prima-facie* evidence that the defendant Trustee had accounted for all funds in his hands as such, except as shown in the report of these auditors. The County thereafter could not have brought any action against Abernathy and his sureties ignoring this settlement; but it did not have the effect of precluding the County from filing a bill setting forth specific errors in the settlement and seeking to surcharge and falsify the Trustee's accounts. As said by this Court in *State ex rel. v. Follis,* 140 Tenn., 513, the settlements, reports, etc., of the Trustee cannot be ignored by the County, but the County is *prima-facie* bound by the settlement, just as any private individual would be; and,

"Just, as in the case of any private litigant, they would be compelled, in a court of equity, to file a bill to re-open the settlement for fraud, and have an accounting at large, or to specify the special errors or omissions

of charge or the improper credits allowed." See, also, 1 C. J., p. 709, Sec. 335; 33 C. J., p. 1064; Gibson's Suits in Chancery, Secs. 952, 955.

█ (b) The doctrines of estoppel *in pais* and laches are based on the theory that the conduct of the party against whom these defenses are asserted has mislead the other party, or has otherwise placed him in a situation where his rights will be imperilled and his defenses embarrassed. In *Rogers* v. *Colville,* 145 Tenn., 650, this Court said that estoppel is a branch of the law of evidence; that estoppels are not favored; and a party will not be estopped from asserting a truth, or enforcing a right to which he is otherwise entitled, unless by his conduct another's rights have been prejudiced.

And so also the doctrine of laches rests on the ground that by reason of delay on the part of the complainant the defendant has been prejudiced by loss of evidence, or other circumstances, so that his defenses will be embarrassed. Where the defense of laches is based solely on the lapse of time a court of equity usually applies the statutory period applicable in a court of law; but where there has been a loss of evidence, as by reason of the death of witnesses, etc., a party may be barred by a delay in attempting to enforce his claim far short of the period prescribed by the statute of limitations. Pomeroy's Equity Jurisprudence, Sec. 1440, *et seq.;* 21 C. J., p. 234, *et seq.; Evans* v. *Steele,* 125 Tenn., 483; *State* v. *McPhail,* 156 Tenn., 459; *Samuel* v. *King,* 158 Tenn., 546.

It may be that the defendants upon answer can show that there has been such a change of conditions since the settlement of the accounts of the Trustee with the County Court that the doctrine of laches or estoppel should be applied; but the bill does not disclose the existence of such conditions.

182

So far as the attempted release by the County Court of any further responsibility against Abernathy and his sureties is concerned, this is probably of no effect, in view of Shannon's Code, Sec. 928a11, which provides that no power exists, either in the court or any other official, to release any officer charged with the collection of revenue, or his sureties, from the payment of any revenue, penalties or fees which he or they may be liable for. It would seem, that the release adds nothing to the force of the approval of the accounts as constituting a settlement thereof between the Trustee and the County Court.

■ AUTHORITY OF COUNTY TO BRING SUIT. The bonds sued on are all payable to the State, in conformity with the requirements of the statute. Shannon's Code, Sec. 1082.

The statute also provides that any person aggrieved may maintain suit on an official bond without any assignment thereof. Shannon's Code, Secs. 1093, 4494.

It is also expressly provided by statute that suits for the use and benefit of any county against any delinquent officer or his sureties shall be brought in the name of the State for the use of the county for whose benefit the suit is instituted. Shannon's Code, Sec. 495. See, also, Sec. 928a2-4.

The Act of 1923, Chapter 109, referred to and relied on in the assignments of error, does not appear to affect or alter the foregoing provisions. It is true that Section 4 of this Act authorized the auditors, whose appointment is provided for by the Act, to collect any amounts that their audits may show to be due and owing to the State and county from any county official; and in the event the auditor cannot collect such sums without suit he is required to report the facts to the Judge or Chairman of

the County Court and the Commissioner of Finance and Taxation, and upon the making of such report it is made the duty of the County Judge or Chairman to institute suit for the collection of the amounts reported by the auditors within ninety days from the date of receiving the report, etc.; and in the event the County Judge or Chairman fails or refuses to have such suits instituted within ninety days, it is provided that the Commissioner of Finance and Taxation may appoint an attorney, "to institute and prosecute said suit or suits for the benefit of the State and county."

This provision does not undertake to prescribe the manner of bringing the suit, but only the persons by whom it shall be brought; and it would seem that whether such suit is brought by the County Judge or Chairman, or by the Commissioner of Finance and Taxation, it would be proper to bring it in the name of the State for the benefit of the county, as provided in the statutes hereinbefore referred to, which do not seem to be in conflict with the Act of 1923 and which are not expressly repealed by that Act. Furthermore, this suit is not brought under the provisions of the Act of 1923, in that it is not predicated on any report made by the said Auditor. On the contrary, it is based on alleged errors in various audits made by different auditors, including one of the auditors of the State.

The suit was expressly authorized by resolution of the Quarterly County Court, and there would seem to be no valid objection to it on account of the manner in which it was instituted.

█ THE STATUTE OF LIMITATIONS. An action against a public officer on his bond is barred unless brought within ten years after the cause of action accrues. Shannon's Code, Sec. 4473. On the other hand, actions against the

sureties of public officers are barred unless brought within six years after the cause of action accrues. Shannon's Code, Sec. 4472.

The statute prescribing the duties of County Trustees provides, among other things, that he shall on going out of office, ''make settlement immediately with the Judge or Chairman of the County Court, and pay over the balance found in his hands to his successor, taking duplicate receipts.'' Shannon's Code, sec. 523, Sub-section (11).

This is the only specific provision with respect to the payment by the Trustee of surplus revenues collected by him; that is, revenues in excess of amounts paid out on obligations of the county.

It is true that, by Shannon's Code, Section 660, sub-section 5, the County Judge or Chairman may call on ''the collector of the county tax'' at the time prescribed by law for the purpose of making a final settlement for the year last past; but that provision has no application in this case; and in the absence of such action by the County Judge it would seem that the Trustee is not in default in the payment of the funds in his hands until he fails to make settlement and pay over the balance to the Judge or Chairman of the County Court on going out of office.

The first term of the defendant Abernathy, during which it is claimed the balance sued for in this cause came into his hands, terminated August 31, 1922, and this suit was brought August 14, 1928, within six years from the termination of the Trustee's term of office. The right of action on his bond for this balance did not accrue until the end of his term, and the suit was brought within six years from that time.

■ Furthermore, it would seem that the case might fall within the provisions of Shannon's Code, Section 4475, to the effect that when there are mutual accounts between persons who are not merchants the time for bringing suit is computed from the true date of the last item, "unless the account is liquidated and a balance struck." The Trustee during his term of office was continually receiving funds belonging to the county with which he was chargeable and, on the other hand, was continually paying out and disbursing the funds so collected on legitimate claims against the county for which he was entitled to credit.

There was no liquidation of the account during this term, and, until the end of the term and settlement with the County Judge, it would be exceedingly difficult to ascertain the true state of account, and until the end of his term the amounts collected by him were continuously subject to reduction by disbursements properly made. It would seem, therefore, that the Statute of Limitations under the provisions of Section 4475 would not begin to run until the date of the last item, whether it be a credit or a charge; and it does not appear from the face of the bill that the suit was not brought within six years from the date of the last item.

■ THE SUFFICIENCY OF THE BILL AS A BILL TO SURCHARGE AND FALSIFY THE SETTLEMENT BETWEEN THE COUNTY AND DEFENDANT TRUSTEE. The bill alleges the details of the charges and credits in the accounts of the defendant Trustee fully and elaborately. It alleges that the result of the deduction of the legitimate credits to which the Trustee was entitled from the aggregate of the items with which he was chargeable was that there was a balance of five thousand seven hundred forty-four and 18/100 ($5,744.18) dollars in his hands at the close of his

first term over and above the amount shown in his settlements and in the audits, and which he should have paid over to himself as Trustee at the beginning of his second term. The bill also undertakes to set forth at length the manner in which the alleged indebtedness arose and the errors and omissions in the various settlements and audits to which the failure to show this balance is attributable. On its face it would seem that this bill is sufficient to conform to the legal requirements with respect to such a pleading; and there is no ground of demurrer attacking it specifically because of failure to conform to such requirements.

This Court has recently held that a demurrer is a pleading not favored, and the courts make every reasonable presumption in favor of a bill when assailed by demurrer. *McFarland* v. *Mass., etc.,* 8 S. W. (2), 369, 371. The decree of the Chancellor overruling the demurrer will be affirmed and the cause remanded for further proceedings.