STATE, FOR USE OF OBION COUNTY, v. COBB, ET AL.

(*Jackson*, April Term, 1947.

Opinion filed May 31, 1947.

Rehearing denied June 26, 1947.

676

678

Miles & Miles, of Union City, for complainant.

Holmes & Holmes, of Trenton, for defendant C. H. Cobb.

Weakley & Weakley, of Dyersburg, for defendant Maryland Casualty Co.

Mr. Justice Tomlinson, delivered the opinion of the Court.

■ This is a suit commenced on July 27, 1945, by Obion County to recover alleged excess fees of $16,177.35, together with interest and penalties, collected by C. H. Cobb by virtue of his office as clerk and master of Obion County from June 13, 1932 to October 28, 1938. The suit is based upon an audit made and completed on May 31, 1945, by auditors from the office of the State Comptroller. This audit is made an exhibit to the bill. Answers denying liability were filed by all defendants. The case was heard by the chancellor without proof other than a stipulation of facts. In a well considered opinion he found that the amount of excess fees received by Cobb and owed but not paid over to the County was $14,615.30. He rendered judgment for that amount against Cobb and Maryland Casualty Company, surety on Cobb's bond, but declined to add interest and penalties, or to charge Cobb with the cost of premiums paid out of the fees of the office for his corporate bond. All parties appealed to the Court of Appeals, and the case was properly transferred to this court under the authority of King v. King, 164 Tenn. 666, 51 S. W. (2d) 488.

Among the fees, commissions, etc., collected by Mr. Cobb by reason of his office as clerk and master is an item of $14,026.63 retained by Cobb as a 5% commission on collection of delinquent taxes resulting from suits filed in his court for that purpose under the provision of our Delinquent Tax Law carried in the Code commencing with section 1573. It is the contention of Mr. Cobb that those commissions were for special services rendered by him as receiver and, therefore, by Code, section 10730, are excepted from the excess fees, commissions, per-

quisites and emoluments of his office for which he must account to the county under the General Salary Law. Obion County insists that he did not receive those commissions for special services as receiver and, therefore, under the General Salary Law he must take these commissions into consideration in accounting for excess fees. Generally speaking, the amount claimed by Obion County to be owed by Cobb is represented by these commissions and is not due to any defalcation upon his part, for the reason that the fees, commissions, perquisites and emoluments of Cobb's office during his tenure thereof, and including collections had after he retired, did not, except to the amount of $544.20, exceed his statutory salary, the salary of his deputies and expenses of office, including the expense of official bonds, if there is left out of consideration the $14,026.63 retained by him as 5% commission on collection of delinquent taxes. So, the first issue to be determined is whether Cobb must take these commissions into consideration in ascertaining the excess fees for which he must account to the County. That in turn depends upon whether Cobb received these commissions as compensation for special services as receiver.

By Code section 1588, it is provided that suits shall be filed in the circuit or chancery court for the collection of all delinquent land taxes due the state and county. Under Code section 1594, any defendant to such suit may pay the amount of tax with interest and penalty thereon due upon his land and have the suit dismissed as to his property. As to such money so paid in under section 1594, Code section 1595, provides as follows:

"The money paid into court shall be received by the clerk and paid out by him in the same manner as other public revenue, and he shall receive the same compensation for receipting for and disbursing taxes under

these proceedings as is allowed upon his receipt and disbursement of other public revenues.''

Nothing more appearing, it is obvious from the very wording of section 1595 that any monies paid in by defendants under section 1594 was received by Cobb under section 1595 as clerk for which a statutory fee was fixed and it would follow, as a matter of course, that such fee must be accounted for in ascertaining excess fees.

It is stipulated that the taxes out of which these commissions were taken by Cobb were all taxes which were ''paid without a sale of the property'' and that in no case ''was a receiver asked for.'' The necessary inference from this stipulation is that all of these taxes were paid by defendants in accordance with the provisions of Code, section 1594, above referred to. It follows that the payments were received by Cobb as clerk and the 5% commission which he retained must be accounted for in determining excess fees unless, as insisted by Cobb, a certain rule of the court *ipso facto* made him, the clerk and master, receiver of these properties and thereby entitled him to this commission for special services as such receiver. It is stipulated that no receiver was appointed as to any of the properties unless the appointment was automatic by reason of this rule. This rule is the following order of the court placed upon the minutes on January 1, 1936:

''It appearing to the Court that when Chapter [101] of the Acts of 1921 and the amendments thereto were enacted by the General Assembly of Tennessee there was no statute nor rule of this Court providing compensation for the services required by said act for the Clerk and Master as Special Commissioner and Receiver, it is therefore ordered, and made a rule of this Court that for his services as special commissioner and receiver in

cases where bills are filed for the purpose, of collecting revenues due the State and County and City, the Clerk and Master shall be entitled to and is authorized to retain as his compensation 5% of the total amount of tax and penalty collected by him in such cases."

The stipulation further provides: "The legality of this order is not admitted by complainant, but is challenged".

██ ██ Section 1602 provides that in cases in which bills are filed to collect delinquent taxes the Court may appoint a receiver to take charge of the property upon which the tax is owed. However, the appointment of a receiver by virtue of this code section does not follow, as a matter of course. It was held by this court in *State ex rel.* v. *Collier*, 165 Tenn: 163, 53 S. W. (2d) 982, that in the absence of an allegation that the land upon which the tax is owed is not adequate security for the taxes due, the appointment of a receiver would not be authorized. So the above referred to rule entered as an order upon the minutes of the court is of no validity in so far as it was intended to appoint the clerk and master receiver or special commissioner of all lands included in a bill filed for the purpose of collecting delinquent taxes on such land. Appointment could only be made as to those lands which the tax bills alleged were not adequate security for the taxes due. Since the alleged appointment of Cobb in this case was not based upon any such allegation, it follows that he was not in fact a receiver or special commissioner of any of these properties. Nor does it appear that he rendered any service in the collection of these taxes other than that contemplated by Code, sections 1594 and 1595. It, therefore, follows that the $14,026.63 retained by Cobb as a commission on the collection of these delinquent taxes was not compensation for special services as trustee or receiver. This commission, however, was collected by

him by virtue of his office as clerk and master. It was, therefore, a commission which under the provisions of Code, section 10730, had to be considered in calculating excess fees which he was obligated to pay over to the county trustee as county revenue.

The audit shows that the excess fees, including these commissions of $14,026.63, received by Cobb but not paid over to the County, were $14,615.30, after deducting the expense of premiums on official bonds. This is the amount for which the chancellor rendered judgment. It is agreed that this audit is correct the only question being as to whether the $14,026.63, commissions on the delinquent land tax collection, should be considered in determining excess fees. Having disposed of this question adversely to the contentions of Mr. Cobb, all assignments of error directed to that question are overruled.

■ Defendant below, Maryland Casualty Company, surety upon the bond of Mr. Cobb, pleads the six year statute of limitations (Code, section 8600) applicable to sureties on bonds of public officials; and Mr. Cobb pleads the ten year statute (Code, section 8601) applicable to public officials. He also pleads the six year statute, but this statute (8600) is not applicable to public officials.

Code, section 10729, required clerk and master Cobb to make a remittance to the county trustee on the first day of September and April of each year during his tenure of office of all compensation received by him in excess of his salary, together with the salaries of his deputies and the expenses of his office. This court held in *State ex rel.* v. *O'Dell*, 169 Tenn. 248, at page 255, 84 S. W. (2d) 577, at page 579, that the clerk must comply with this requirement and that "failing to comply, he becomes delinquent, for which an action will lie." Cobb never paid any excess fees to the trustee. Based upon

684

this fact and upon the holding in the *O'Dell Case*, the defendants below both insist that the two statutes of limitations above referred to began to run on the first day of April and September of each year as to the excess fees which Cobb should have remitted to the trustee on those dates. If this be true, then a recovery against the surety is barred as to all excess fees due to be remitted to the trustee prior to July 27, 1939, and is likewise barred as to Cobb for all such excess fees due to be so remitted prior to July 27, 1935, since the present suit was not filed until July 27, 1945. ·

It is true, as held in the *O'Dell Case*, that the county had the right at each six months intervals to require by suit, if necessary, that Cobb pay the excess fees then in his hands over to the county trustee. It does not follow from this that the running of these two statutes of limitations started at that time. Code, section 10742, provides that when the several terms of office of the officers are ended a final settlement will be had between the county and said officers, and any deficiency in the salary of said officers for any year during their tenure will be paid to them out of said funds arising from the funds paid in by said officials.''

Under the provisions of this section, Cobb was entitled to receive from the fees, commissions, etc., collected the maximum yearly salary and the expenses of his office during his entire tenure thereof. If there was an excess of fees during any one year or years but a deficit thereof for any subsequent year or years during his tenure of office, then Cobb had the right to apply the excess fees of previous years to pay the deficit of subsequent years and so to apply such previous excess fees until he had received his maximum salary and the salary of his deputies and expenses of office for every year and every month

of his tenure. If he had paid such excess fees of previous years to the trustee he would have had the legal right to require from time to time its repayment to him to the extent necessary to make up the deficit of subsequent years and months of his tenure of office. So, until his tenure of office ceased the ownership of excess fees previously paid over to the trustee could not be certainly determined. As noted in *State for use of* v. *Abernathy*, 159 Tenn. 175, at page 185, 17 S. W. (2d) 17, at page 21:

"It would be exceedingly difficult to ascertain the true state of account, and until the end of his term the amounts collected by him were continuously subject to a reduction by disbursements properly made."

Mr. Cobb's tenure of office terminated on October 28, 1938. Until that time the ownership of excess fees previously paid to the trustee could not be determined with such certainty as to enable the county to maintain a suit for the purpose of obtaining a final judgment against Cobb and the surety on his bond. Therefore, the cause of action in which Obion County was entitled to procure a final judgment against Cobb for excess fees collected during his tenure of office did not accrue until October 28, 1938. That is the purpose of the present suit. So the six and ten year statute of limitations did not begin to run in bar of the rights sought here to be enforced by this suit until that date. We think the contention of the defendants below as to when these two statutes of limitations began to run is due to their unintentional failure to distinguish the right of the county to bring suit for recovery of a final judgment, as in this case, from the right of the county each six months to bring suit as a means of compelling the clerk to turn fees which are excess at that particular time over to the trustee to be repaid to the clerk when and if necessary during the

clerk's tenure of office. Both rights exist. They are not inconsistent.

█ For another reason, the two statutes of limitations did not begin to run in this case until October 28, 1938. As above observed, the ownership of the excess fees paid over to the trustee each six months could not be determined definitely until the termination of Cobb's tenure of office. By reason of this fact, it must necessarily be concluded that the provision requiring that each six months excess of fees shall be paid to the trustee is a provision enacted solely for the benefit of the county; that is, so as to the better protect its ultimate property, if any, in these excess fees, and to the end that it may use the same for payment of current expenses until a refund thereof is required pending the arrival of the time when its ownership of these paid in excess fees, or any portion thereof, may be definitely determined. Under our decisions, a provision of this character intended solely for the benefit of the county, and not of the clerk and master, cannot be taken advantage of by the clerk and master to accelerate the beginning of the running of the statute of limitation. *Mayor and Aldermen of Town of Morristown* v. *Davis,* 172 Tenn. 159, 110 S. W. (2d) 337, 113 A. L. R. 1164.

█ Since the cause of action here being asserted did not accrue until October 28, 1938, and since suit was instituted on July 27, 1945, and because the only statute of limitation which Cobb, the clerk and master, can invoke is the ten year statute, Code, Section 8601, it results that all of Mr. Cobb's assignments of error directed to this question must be overruled.

█ It is also insisted that the county is estopped from asserting any claim to excess fees predicated upon the insistence that the 5% commission on delinquent taxes collected by Mr. Cobb are fees for which he is compelled

to account and that the county is also guilty of laches which bars a recovery. Mr. Cobb did report monthly to the trustee his delinquent tax collections and that report showed that he had retained a commission of 5%. He did not file itemized statement of fees, commissions and charges collected by him, nor did he make itemized reports to the county judge or trustee of his salary or those of his deputies, or the expenses of his office. In this plight of his records, the fact that the tax collection reports to the trustee disclosed a retention of the 5% commissions therefrom did not inform any public official that his fees, including this 5% tax commission, exceeded his maximum salary, expense of the office, etc. So, in this situation, Mr. Cobb is not in a position to plead laches or estoppel upon the part of the county.

As said in *State for use of* v. *Abernathy, supra,* 159 Tenn. at page 181, 17 S. W. (2d) at page 19:

"The doctrines of estoppel (*in pais*) and laches are based on the theory that the conduct of the party against whom these defenses are asserted has misled the other party, or has otherwise placed him in a situation where his rights will be imperilled and his defenses embarrassed. . . . So also the doctrine of laches rests on the ground that by reason of delay on the part of the complainant the defendant has been prejudiced by loss of evidence, or other circumstances, so that his defenses will be embarrassed. Where the defense of laches is based solely on the lapse of time, a court of equity usually applies the statutory period applicable in a court of law; but where there has been a loss of evidence, as by reason of the death of witnesses, etc., a party may be barred by a delay in attempting to enforce his claim far short of the period prescribed by the statute of limitations."

There was no loss of evidence in this case nor the intervention of any other fact which might have embarrassed either Mr. Cobb or his surety in their defense. Further, by Code, section 10735, it being part of the Salary Law, it is provided: "But the payment or allowance of any salary or expense statement shall in no way prejudice or preclude the disallowance of any one or more items found to be improperly included in any of said statements, when the same shall have been audited, nor shall it relieve such officer from refunding to the county all such items so improperly included." As stated in the *O'Dell Case, supra*, this is simply a case where an officer has failed to account for fees collected and, "the question of estoppel is not involved. But if it were, under our authorities, in the facts of this cause, it could not be given effect."

All assignments of error directed to laches and estoppel are overruled. The result is that all of the assignments of error of Mr. Cobb are overruled.

Obion County by its assignments of error contends (1) that the court should not have allowed Cobb credit for the cost of his surety bond and (2) should have imposed penalties and interest upon the amount of the recovery allowed.

 The statute expressly permits the clerk and master to pay the expense of his official bond out of the fees of his office. We see no reason why an exception should be made in this case.

 As to the contention that the chancellor should have imposed penalties and interest, it is clear that this suit is a result of a *bona fide* belief upon the part of Mr. Cobb that he was entitled to a 5% commission on delinquent tax collections without any obligation to account therefor under the Salary Law. There is no evidence

of a wilful defalcation upon the part of Mr. Cobb. "Drastic penalties are not favored and statutes imposing them are strictly applied." The penalty sought in this case "was designed to prevent misappropriation of public revenue." *State* v. *Miner*, 176 Tenn. 158, 163, 138 S. W. (2d) 766, 768. We do not think the penalty provisions should be made applicable to the facts of this case.

All of Obion County's assignments of error are over-ruled.

▮▮▮▮ Maryland Casualty Company, corporate surety on the bond of Cobb as clerk and master, pleads the six year statute of lmitations, being Code section 8600. We have hereinbefore held that the cause of action accrued on October 28, 1938, that being the date upon which Cobb's tenure of office terminated. The six year statute began to run on that date in favor of the surety unless we are able to sustain the contention of Obion County that section 8603 of the code prevented the six year statute from applying. At the time Cobb's tenure of office terminated on October 28, 1938, he was indebted to Obion County by reason of excess fees in the amount of $9,223.14. Thereafter his successors in office continued to pay fees and commissions earned by Cobb but not collected during his tenure of office. They were collected by his successors in office. There were many of these payments, the first being on October 29, 1938, and the last being on January 4, 1945. The total amount so collected and paid over at various times to Cobb after his tenure of office ceased was $5,392.16, after deducting an item of $367.77 which the stipulation agrees was not part of the fees for which he must account as clerk and master. Code section 8603, invoked by Obion County provides that "when there are mutual accounts between persons who are not merchants, the time is computed from the true date of the last item,

unless the account is liquidated and a balance struck.''
It is the insistence of the county that the continued payments to Cobb by his successors in office to the last such payment on January 4, 1945, prevented the application of the running of the six year statute until that date by reason of the provisions of section 8603. The fallacy of this contention is that there were no mutual accounts between October 28, 1938, and January 4, 1945. On October 28, 1938, Cobb was indebted to Obion County in the sum of $9,223.14. This indebtedness was not subject to any reduction thereafter because it represents the balance of excess fees after Cobb has been given credit for his maximum salary and for the salaries of deputies and for all expenses of office, including the cost of bond during his entire tenure thereof. So Obion County owed Cobb nothing on October 28, 1938, which could be credited against this indebtedness to it of $9,223.14. There were no mutual accounts. There was simply a debt of the amount above specified owed by Cobb to the county. The case does not come within the facts of *State for use of* v. *Abernathy, supra,* because Cobb's tenure had ended and the debt was not subject to further reduction. Every cent thereafter paid to Cobb by his successors in office had only the effect of increasing the indebtedness of Cobb to the county. It, therefore, results that code section 8603, does not apply. This being true, the statute, as we have hereinbefore held, began to run on October 28, 1938, and on October 28, 1944, this six year statute barred a recovery by the county against the surety for any part of the $9223.14 owed by Cobb at the time his tenure of office ceased. The plea of the defendant, Surety Company, of the six year statute of limitations is, accordingly, sustained to that extent.

The payments which were thereafter made to Cobb from time to time by his successors in office were monies belonging to Obion County since Cobb had been paid in full all to which he was entitled. Therefore, as each such payment was received by Cobb from his successors in office it became his duty to deliver it immediately to Obion County, the true owner. Therefore, the six year statute began to run in favor of the Surety Company on each such payment as soon as it was made to Cobb. *Hawkins* v. *Walker,* 12 Tenn. 188. Since this suit was not instituted until July 27, 1945, a recovery against the Surety Company is barred by the statute of limitations as to all payments paid over to Cobb by his successors in office six years or more before July 27, 1945. The plea of Maryland Casualty Company is, accordingly, to that extent also sustained. The total amount paid over to Cobb by his successors in office and due by him to be paid immediately upon receipt to the county was $5,392.16. Of this amount $859.52 was paid to Cobb by his successors in office six or more years before this suit was instituted on July 27, 1945. Recovery against the surety of this $859.52 is, accordingly, barred by the six year statute. Deducting this $859.52 from the $5,392.16 there is left a balance of $4,532.64 paid over to Cobb within less than six years before this suit against him and his surety was instituted.

Whether the surety is liable for this $4,532.64 presents a most difficult question. It is contended with considerable logic that the surety is not liable for the acts or wrongs of Cobb done after he went out of office because their contract, the surety says, was only to indemnify the county for wrongful acts done while he was clerk and master. The liability of the surety, if any, is by

reason of the clerk and master's official bond which it executed as surety. This bond provides: "Now if the said C. H. Cobb . . . shall faithfully discharge all of the duties of the said office of the clerk and master then the above obligation to be void, otherwise to remain in full force and effect." Cobb was paid this money after he went out of office by reason of the fact that he had earned it as clerk and master, an office he was able to assume because he executed the bond in question. One of the duties of his office was to pay these excess fees over to the county. This duty as to the $4,532.64 could not be completed during his tenure of office because he had not at that time collected this money, but the duty continued. And in not paying it over when received he failed to faithfully discharge all of his duties of the said office. The Maryland Casualty Company agreed by its bond that he would faithfully discharge all of his duties of said office. We are, accordingly, of the opinion that it is liable for this $4,532.64.

The decree of the court below awarding Obion County a judgment of $14,615.30 against C. H. Cobb is affirmed. That decree is modified so as to award it a judgment of $4,532.64 against Maryland Casualty Company, a corporation of Baltimore, Maryland, and as so modified this judgment against the said Maryland Casualty Company is affirmed. All amounts paid by Maryland Casualty Company on this judgment rendered against it will be credited against the judgment of $14,615.30 awarded against C. H. Cobb. All amounts in excess of $10,082.66 paid by Cobb on the judgment rendered against him will be credited on the judgment rendered against Maryland Casualty Company, the intent being that the total sum to be collected by Obion County from said Cobb and said Maryland Casualty Company is $14,615.30.

Obion County will pay only so much of the costs of this court as is incident to its appeal. C. H. Cobb and the Maryland Casualty Company will pay all the remainder of the costs. The costs are so adjudged.

All Justices concur.