No. 48,105

STATE OF KANSAS, *ex rel.*, VERNON D. GRASSIE, County Attorney of Crawford County, *Appellant,* v. GENE E. MASTERSON, and THE WESTERN SURETY COMPANY, Sioux Falls, South Dakota, *Appellees.*

(561 P. 2d 796)

Opinion filed March 5, 1977.

*Fred Spigarelli*, of Pittsburg, argued the cause and *Michael F. McCurdy*, of Pittsburg, was with him on the brief for the appellant.

*Nelson E. Toburen*, of Wilbert, Lassman, Toburen & Wachter, of Pittsburg, argued the cause and was on the brief for The Western Surety Company, appellee.

The opinion of the court was delivered by

KAUL, J.: This action was brought by the state for the benefit of Crawford County against Gene E. Masterson, county treasurer, and the corporate surety on his official bond, The Western Surety Company, to recover $59,500.00 which Masterson allegedly embezzled from county funds during his tenure of office.

Masterson is not a party to this appeal. For convenience The Western Surety Company will be referred to hereafter as Western.

The issues on appeal concern the application of the applicable statute of limitations (K. S. A. 60-512[2]) to the stipulated facts of the case and the effect of the stipulation entered into by the parties on the posture of the case.

Masterson was first elected county treasurer in November 1966 and assumed the duties of office on October 10, 1967. He was elected to three additional successive terms at the general elections of 1968; 1970; and 1972.

The terms of office for which Masterson was elected are as follows: October 10, 1967 to October 14, 1969; October 14, 1969 to October 12, 1971; October 12, 1971 to October 9, 1973; and October 9, 1973 to October 14, 1975. Western duly executed and supplied an official bond in the amount of $50,000.00 for each term of office pursuant to the provisions of K. S. A. 19-501, *et seq.* [now 1976 Supp.].

During the last term, on November 5, 1973, Masterson resigned. As a result of a county audit, Masterson was charged with five counts of grand theft. He was charged in count 1 with theft of $5,626.71 for the year ending December 31, 1969; in count 2 in the sum of $25,714.63 for the year ending December 31, 1970; in count 3 in the sum of $15,640.92 for the year ending December 31, 1971; in count 4 in the sum of $9,757.79 for the year ending December 31, 1972; and in count 5 in the sum of $2,759.95 for the year ending December 31, 1973; the sum total amounted to $59,500.00.

Masterson eventually pled guilty to counts 4 and 5 and the state dismissed the first three counts of the information.

The petition in the instant action was filed May 24, 1974, alleging that Masterson had misappropriated the total sum of $59,500.00

during his terms of office and that Western, on its bond, was responsible for these misappropriations. The petition specifically alleged that Masterson through fraud and deceit withheld, at the end of calendar years 1969 through 1973, the sums for each year as recited in the information filed in the criminal case filed against him as set out above. In its answer to plaintiff's petition Western moved to dismiss plaintiff's action as to all sums not accounted for, not settled for, or misappropriated, more than three years preceding commencement of the action on the grounds that the action for such prior sums was barred by K. S. A. 60-512[2]—the three year statute of limitations applicable to actions upon a liability created by statute. In its reply to Western's answer, plaintiff alleged the cause of action sounded in fraud and that K. S. A. 60-513 was the applicable statute of limitations.

On May 14, 1974, Western tendered the sum of $28,158.66, representing the amounts claimed to have been embezzled during the years 1971; 1972; and 1973. Western offered to confess judgment in this amount. The tender and judgment offered were rejected by plaintiff.

On December 19, 1974, a pretrial conference was held and the parties submitted a stipulation which was accepted and approved by the trial court. The stipulation in part pertinent to the issues herein is recited in the pretrial order as follows:

"The parties stipulate further that the key and only issue for determination at this time is whether K. S. A. 60-512 or 60-513 is the appropriate statute of limitations and that the same is an issue of law for the court's determination. If K. S. A. 60-513 is the appropriate statute, defendant, Western Surety Company, owes for all alleged shortages; if K. S. A. 60-512 is the appropriate statute, said defendant owes only for the years 1971, 1972 and 1973, the claims for the years 1969 and 1970 being barred by the said statute of limitations."

On February 20, 1975, the trial court filed its memorandum decision ruling that the action was founded on a liability created by statute; that K. S. A. 60-512 controlled; and that recovery against Western for losses sustained in the years 1969 and 1970 was barred by the statute. The trial court further ruled:

". . . A civil action accrued to Crawford County each time the Treasurer did not truly and accurately account and settle his accounts as required by K. S. A. 19-507 and 19-520. . . ."

Following the trial court's ruling the plaintiff retained present counsel who filed a motion for rehearing or new trial. In its motion plaintiff took the position that the trial court erred as a matter of

law in accepting and approving that portion of the pretrial order which recited that in the event 60-512[2] did apply it was stipulated that 1969 and 1970 were not collectable. Plaintiff contended that, notwithstanding the applicability of 60-512[2], the years 1969 and 1970 were collectable and that the court erred as a matter of law in approving a wrong application of the law rather than merely a stipulation of facts. In its motion for rehearing plaintiff asked that the trial court reverse its decision with respect to the erroneous approval of the stipulation as to when the statute of limitations commenced to run and enter judgment for plaintiff for the shortages in 1970, and further that plaintiff be allowed time to discover when the 1969 shortages occurred. Plaintiff later abandoned any claim for 1969 shortages.

Plaintiff's motion for rehearing was overruled by the trial court. In this ruling the trial court appears to have adopted the theory that the statute commenced to run whenever the county treasurer first took funds. In this connection the trial court stated in its memorandum:

"I do not understand the cases cited by the parties or in the Memorandum Decision to mean that the statute of limitations only commences to run either at the end of the term of the officer who converts county funds to his own use during that term. The delict occurs when he first takes the funds and at such time the county has an absolute cause of action against the surety to recover the amount taken."

The court further noted the provisions of K. S. A. 19-507 require a county treasurer to meet with the board of commissioners in October of each year and at such other times as they may direct to settle with them his accounts as treasurer and to exhibit his books and accounts. The court also noted K. S. A. 19-212 provides that the board of county commissioners have the power to examine and settle all accounts of the receipts and expenses of the county. Although the court did not specifically say so, reference to the above mentioned statutes indicates that the court believed a cause of action might have accrued each time Masterson violated the provisions of such statute.

In concluding its memorandum, the court stated that it adhered to the position previously taken and overruled plaintiff's motion for a new trial and rehearing.

This appeal followed.

Appellant specifies three points on appeal in these words:

"1. It was improper for the Trial Court to approve the pretrial order with respect to the Stipulation made between the parties concerning the application

and interpretation of K. S. A. 60-512, which application and interpretation made by the parties, approved by the court was erroneous.

"2. The Court erred in finding that the statute of limitations which was K. S. A. 60-512, began to run at the end of each year that the County Treasurer embezzled county funds, rather than at the end of this term of office at which time he was required to turn over to his successor, all monies that he had collected in that office.

"3. The court erred in not allowing plaintiff's attorney fees pursuant to K. S. A. 40-256."

Appellant's first point is that the stipulation of the parties as to the interpretation and application of 60-512 was erroneous and is not binding on the court. Whether the stipulation as to the law, referred to in point one, is erroneous is actually the issue raised in point two. Thus, we shall first consider appellant's point two.

The question presented in point two is—when did a cause of action accrue for the recovery of the sums taken by Masterson during the year 1970? Appellant claims it was October 12, 1971, when the term of office in question expired, at which time the county treasurer was required to turn over to his successor all moneys belonging to his office. Western, on the other hand, contends a cause of action accrued each time Masterson violated his public trust and statutory duties in failing to make accurate statements for his office on the last business day of January, April, July and October in each year as required by K. S. A. 19-520. Western also cites K. S. A. 19-521 which prescribes the penalty for swearing falsely to quarterly statements and K. S. A. 19-507 which provides that the county treasurer shall settle his accounts with the board of county commissioners at its October meeting each year and at such other times as the board may direct.

Appellant now concedes that the action is upon a liability created by statute and that 60-512[2] is the applicable statute. It is appellant's contention that even though 60-512[2] is applicable, it does not commence to run until the end of the term of office for which the bond was obligated, i. e., that the stipulation was erroneous in this regard; and that the trial court erred in not rectifying the error when it was called to the court's attention by appellant's motion for rehearing or new trial.

It appears from its memorandum decision, in Western's motion to dismiss and on appellant's motion for rehearing, that the trial court relied on the stipulation and on decisions of this court holding that an action against a county treasurer and his surety to be one arising from a liability created by statute. The court cited *State,*

*ex rel., v. McKay,* 140 Kan. 276, 36 P. 2d 327; *City of Leavenworth v. Hathorn,* 144 Kan. 340, 58 P. 2d 1160; and *Board of Education v. Jones,* 151 Kan. 276, 98 P. 2d 120. These cases clearly adhere to the rule that such actions are based upon a liability created by statute and governed by the three year statute of limitations. They support the trial court's ruling in this regard. They do not, however, support the trial court's application of the statute as to when a cause of action accrues in a suit to recover embezzled funds from a county treasurer's corporate surety, such as the case at bar. The *Hathorn* and *Jones* cases were based upon specific transactions of the public official in each case which were alleged to be in violation of specific statutes relating to the duties of the office. The *McKay* case is identical to that at bar in that it was an action brought by the state for the benefit of Cloud County against a former county treasurer and her corporate surety to recover embezzled funds. The key issue was the applicable statute of limitations which depended upon the nature of the action. On this point the *McKay* court held:

"An action against the county treasurer and the surety on his bond, to recover moneys which it is alleged the treasurer failed to deliver to his successor in office, is an action founded on a liability created by statute and is barred by the three-year statute of limitations." ( Syl. 2.)

In arriving at this holding the court reasoned:

"Now the wrong or delict of the county treasurer, which by the petition is the foundation of this action, was her failure to pay to her successor in office the full amount she should have paid. The petition and its amendment allege inaccuracies in keeping the books and making reports. Whatever these were, and whatever the motive which prompted them, they would not have formed the basis of a civil action against the treasurer or her surety if, notwithstanding them, she had paid over to her successor all that should have been paid. The failure to do this is what hurt, *and it is the one wrong or delict of the treasurer which furnishes the basis for this action.* The statute ( R. S. 19-513) requires the treasurer, upon the termination of his office, to deliver to his successor 'all the books and papers belonging to his office, and all moneys in his hands by virtue of his office'. . . ." (p. 279.) (Emphasis supplied.)

As in the case at bar, the county attorney initiated the action in *McKay* as one sounding in fraud. Although the action was commenced under a misapprehension of the law the erroneous theory was not fatal to the cause. On this point the *McKay* court said:

". . . This cause of action existed irrespective of whether there were allegations of fraud. Under this situation the allegations of fraud and concealment made in the petition constitute matters of inducement leading up to

the real defalcation of the officer which formed the basis of this action, namely, the failure to pay the full amount to her successor. . . ." (p. 280.)

This record is silent as to quarterly statements required by 19-520 or as to annual settlement of accounts with the board of commissioners as required by K. S. A. 19-507. Whether such statements and settlements were made and were inaccurate is not shown. Masterson and his surety were not sued for violating the statutes mentioned, but for the sums misappropriated by Masterson. Masterson's duty was to deliver all moneys belonging to his office to his successor or to any other person legally authorized to receive the same, as well as to render a true account whenever required by the board of commissioners or by any provision of law. The petition alleged the various sums which had been withheld by Masterson. No mention of violations of either 19-520 or 19-507 was made in the petition, the stipulation or the pretrial order.

Even though what was said in *McKay* may have been dicta as to the specific issue therein, we believe it is applicable to the case at bar. In the context of this case the wrong or delict of Masterson, which is the foundation of this action, was his failure to pay his successor in office the full amount he should have been paid. The fact he was his own successor is of no consequence. (See, *State, ex rel., v. McKay,* supra.) The relief sought in this action is not to compel Masterson to settle his accounts with the board of commissioners or to make accurate quarterly statements.

The bond provided by Western in this case for each term of office during Masterson's tenure was a statutory bond as required by K. S. A. 19-502. The obligation clause was in the wording of the statute which reads in pertinent part:

" '. . . [N]ow, therefore, the condition of this obligation is such, that if the said _____ and his deputy, and all persons employed in his office, shall faithfully and promptly perform the duties of said office, and if the said _____ and his deputies shall pay, according to law, all moneys which shall come to his hands as treasurer, and will render a just and true account thereof whenever required by said board of commissioners or by any provision of law, and shall deliver over to his successors in office or to any other person authorized by laws to receive the same, all moneys, books, papers and other things appertaining thereto or belonging to his said office, then the above obligation to be void; otherwise to be in full force and effect.' "

Under the terms of the statute and the bond, the surety's obligation runs to the various statutory liabilities created by the several statutes prescribing the duties of a county treasurer any one of

which, if violated, would result in the accrual of a cause of action against the surety.

Under the provisions of K. S. A. 60-510 an action such as this can only be commenced within the period prescribed by the applicable statute after the cause of action shall have accrued. In general, a cause of action accrues so as to commence the running of the statute as soon as the right to maintain a legal action arises, the true test being at what point in time the appellant could first have filed and prosecuted his action to a successful completion. (*Johnston v. Farmers Alliance Mutual Ins. Co.*, 218 Kan. 543, 545 P. 2d 312; and *Yeager v. National Cooperative Refinery Ass'n*, 205 Kan. 504, 470 P. 2d 797.) On the record presented this lawsuit must be treated as an action for the recovery of funds withheld and not delivered by Masterson to his successor. The first time appellant could have filed and prosecuted this action to a successful conclusion was at the end of a term of office or when a demand was made, followed by a refusal.

The statutes, 19-520 and 19-507, are intended to benefit the county. While a violation thereof would give rise to a cause of action, their purpose is not to work a shortening of the statute of limitations for the benefit of a defaulter and his surety with respect to an action for failure to pay over to a successor in office.

The general rule pertaining to defalcation by a public officer is stated in 63 Am. Jur. 2d, Public Officers and Employees, § 471:

"In case of defalcation or conversion by a public officer, or in case of loss through failure of the bank in which the officer has deposited public funds, the statute of limitations does not commence running against an action on an official bond until the close of the principal's term of office, or until the time of the officer's failure to satisfy a demand therefor, or such other time as he is, by law, required to account. . . ." (p. 917.)

In *Pierce County v. Newman*, 26 Wash. 2d 63, 173 P. 2d 127, the Supreme Court of Washington was confronted with a limitations issue in an action against a county treasurer and his surety and involved statutes similar to those involved in the case at bar. The delict of the county treasurer was the violation of Washington statutes which prescribed duties pertaining to the collection of taxes when collectable. The Washington court determined the action was upon a liability created by statute and further held:

"The statute of limitations commences to run against an action on the official bond of a county treasurer at the end of the term of office in which the cause of action arose." (Syl. 1.)

*State v. Cobb*, 184 Tenn. 675, 202 S. W. 2d 819, was an action

for the benefit of Obion County against the clerk and master of the county and his surety. Although the action involved a county clerk rather than a treasurer the precise issue as to when the cause of action accrued with respect to limitations was the same as that at bar. The county clerk's delict was the failure to remit twice yearly, as required by statute, certain fees collected during his tenure of office. The Tennessee Supreme Court held that the action accrued, for limitations purposes, on termination of the clerk's tenure of office and not on the twice yearly dates on which the clerk was required by statute to remit to the county. The court pointed out the distinction between the county's right to bring suit each six months and the separate right of the county to sue for a final judgment on termination of the clerk's tenure of office. On this point the Tennessee court said:

". . . We think the contention of the defendants below as to when these two statutes of limitations began to run is due to their unintentional failure to distinguish the right of the county to bring suit for recovery of a final judgment, as in this case, from the right of the county each six months to bring suit as a means of compelling the clerk to turn fees which are excess at that particular time over to the trustee to be repaid to the clerk when and if necessary during the clerk's tenure of office. Both rights exist. They are not inconsistent." (pp. 685-686.)

So in the case at bar the county's rights to sue Masterson and his surety at the end of each quarter under 19-520 or each October under 19-507 or at other times when Masterson failed to account are separate and independent of the county's right to bring suit at the end of a term of office under the statutory obligation of 19-502 or under the provisions of 19-513.

Cases from other jurisdictions in accord are collected in an annotation dealing with limitations as to actions against public officers in 137 A. L. R., Anno., p. 674. The author of the annotation makes this pertinent comment:

In the majority of the cases considering the matter, the courts, in view of the circumstances present, have held that the limitation as to an action by a public body against its officer or employee did not begin to run during the term of office or employment, but was suspended until the defendant ceased to be an officer or employee, or at least until the end of the particular term of office during which the alleged liability arose." (p. 674.)

In cases involving other public officers who, by statute, have a duty to pay over to the county treasurer or other repository funds when received or at a time fixed by statute, it has been held a cause accrued upon such failure. In *Cloud County v. Hostetler*, 6 Kan. App. 286, 51 Pac. 62, the clerk of the district court failed to pay over

to the county treasurer when required by statute. This court's decision in the *City of Leavenworth v. Hathorn,* 144 Kan. 340, 58 P. 2d 1160, points up the distinction between *McKay* and the line of cases following *Cloud County v. Hostetler,* supra, cited by Western in its brief at bar. *City of Leavenworth* was an action against the city's secretary of waterworks and his surety to recover money allegedly collected by him during his term and not paid to the city treasurer as required by statute. Among the secretary's statutory duties was the obligation to collect moneys due the waterworks department and to deposit the same daily with the city treasurer. The secretary's term of office ran from April 15, 1929, to April 15, 1931, and the petition was filed on May 12, 1934, more than three years after the term had expired. This court held the action was barred and stated:

". . . We had that identical question before us in *State, ex rel., v. McKay,* supra. The only differences in the two cases are that the McKay case involved a county treasurer required by statute to turn over all moneys collected by him at the close of his term, while in this case the officer is the secretary of waterworks required to turn over money collected by him daily, and to make monthly reports thereof, and in this case the fraud charged is alleged in greater detail than it was in the McKay case. The legal principles governing the cases are identical. In this case, as in that, the wrong or delict of the officer was his failure to turn over moneys collected by him to the officer or person and within the time provided by statute. . . ." (p. 342.)

We have examined all of the cases cited by Western and find them to be either not in point or factually distinguishable. In fact, other than what was said in *McKay,* and the reference thereto in *City of Leavenworth,* we find no Kansas case which deals with what we believe to be the precise issue herein. It is quite evident from the petition and the position taken by appellant at pretrial conference that this action was instituted as an action based on fraud and on that basis was submitted on stipulation for determination as to the applicable statute of limitations. The trial court correctly ruled the action was upon a liability created by statute and that 60-512 [2] was the applicable statute. In proceeding to apply the statute to the action, however, the court was misled by the stipulation of the parties. This action was not based upon Masterson's failure to make quarterly statements or upon his failure to settle accounts with the commissioners; it is an action to recover moneys withheld or misappropriated by Masterson during his several terms of office and which he failed to pay over to his successor in office under 19-502 and 19-513. We hold that such a cause of action accrues at the end of each term of office, or when the office is relinquished or when a

demand is made followed by a refusal. It is a cause of action separate and distinct from, and not inconsistent with, a cause of action arising from a violation of 19-507 or 19-520. In this case it is stipulated that $25,714.63 was misappropriated during calendar year 1970. It follows that such sum was withheld when Masterson's term of office expired on October 12, 1971, when the cause of action accrued. This action was filed on May 24, 1974, well within three years; thus, appellant's claim for funds misappropriated, during Masterson's term ending October 12, 1971, was not barred by the statute of limitations.

In view of our holding with respect to appellant's point two, it becomes necessary that we direct our attention to point one concerning the binding effect of the stipulation of the parties. Western emphatically asserts that appellant is bound by the theory of recovery stated in the pretrial order and by the stipulation fixed the issues and cannot depart therefrom. Western cities numerous cases in which we have so held, including *Fieser v. Stinnett,* 212 Kan. 26, 509 P. 2d 1156; *Freeto Construction Co. v. American Hoist & Derrick Co.,* 203 Kan. 741, 457 P. 2d 1; *Evangelist v. Bellern Research Corporation,* 199 Kan. 638, 433 P. 2d 380; and *Manhattan Bible College v. Stritesky,* 192 Kan. 287, 387 P. 2d 225. Western further asserts that appellant invited the error, if any, by its own stipulation and is estopped from claiming error because of it. (Citing *Hawkins v. Wilson,* 174 Kan. 602, 257 P. 2d 1110.) It is quite true, as Western points out, that this court has long recognized the invited error rule. On the other hand, where a trial court has been misled into adopting an erroneous rule of law, either by admissions or stipulations of the parties, we have held the so-called invited error rule to be inapplicable. The rule, valid though it may be where questions of fact are concerned, cannot be invoked to bind a court in the determination of questions of law. (*In re Estate of Maguire,* 204 Kan. 686, 466 P. 2d 358.) Our conclusion that the cause of action in the instant case accrued at the expiration of the term of office in question is directly contrary to the stipulation of the parties on that point. The stipulation in this regard is clearly one of law rather than of fact and it cannot be said to have defined merely an issue.

Appellant did not wait to assert the error until this appeal was taken, but changed counsel and presented it to the trial court in definite terms on motion for a new trial. The question is presented in a framework identical to that in *Urban Renewal Agency v. Reed,* 211 Kan. 705, 508 P. 2d 1227, wherein the trial court was

said to have been entrapped into an erroneous ruling because of an erroneous concession by appellant's counsel as to the law. We said:

". . . We think, however, that the concession could not bind the appellant and that when asked by new counsel within thirty days to reconsider, the court was not only free but bound to do so. . . ." (p. 711.)

We held:

"As a general rule questions of law must be determined by the court, unlimited by agreement of the litigants, and their stipulations as to what the law is are ineffective to bind the court." (Syl. 4.)

We have held to the same effect in numerous cases. Among the most recent are: *State v. Gregory,* 218 Kan. 180, 542 P. 2d 1051; *In re Estate of Maguire,* supra; and *Beams v. Werth,* 200 Kan. 532, 438 P. 2d 957. Underlying the rule is the rationale that if this court were to be bound by an erroneous stipulation of law, then an erroneous concept of the law espoused by one or more of the parties would compel the court to adopt an erroneous precedent.

Finally, we turn to appellant's request for the allowance of attorney fees under K. S. A. 40-256, which provides for payment thereof by a losing insurer in a suit brought against it when it appears the insurer has refused without just cause or excuse to pay the full amount of the loss. The statute encompasses an insurance company in its capacity as a surety on a bond. (*Thompson Transport Co. v. Middlestates Construction Co.,* 194 Kan. 52, 397 P. 2d 368.) Whether attorney fees are to be allowed must depend upon the facts and circumstances of each particular case. (*Parker v. Continental Casualty Co.,* 191 Kan. 674, 383 P. 2d 937.) In view of the manner in which this case was handled by appellant below, we think Western has not been unreasonable in its position, though mistaken, and we cannot say it refused without just cause or excuse to pay the full amount of the loss as now determined. Hence, we hold attorney fees are not allowable here.

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment in accordance with our holding herein.

Owsley, J., not participating.