The PHENIX SQUARE, LIMITED,
Plaintiff-Appellee,

v.

Ted N. WRIGHT, Defendant-Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 2, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 10, 1984.

Thomas E. Schoenheit, Manier, White, Herod, Hollabaugh & Smith, P.C., Nashville, for plaintiff-appellee.

J. Michael Jacobs, Michael J. Flanagan, J. Michael Jacobs & Associates, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

This is an appeal by defendant Ted N. Wright from a judgment awarding plaintiff, The Phenix Square, Limited (Landlord), the sum of $48,568.08 [1] for the breach of a lease on certain commercial property.

The facts out of which this case arose are as follows:

In August, 1978, defendant entered into a lease with P.C. Properties, Limited, whereby defendant leased space in The Phenix Square Shopping Center in Phenix City, Alabama, for the purpose of operating a health spa. Ownership of the shopping center was subsequently transferred from P.C. Properties to The Phenix Square, Limited.

The lease was for a term of five years commencing December 4, 1978, at a rental of $1,687.50 per month. Defendant was current with his rental payments as of August, 1979. Defendant made a charitable donation of his stock in several health spas, including the one located in The Phenix Square Shopping Center, to The New Image Foundation.

Defendant made a written request to the Landlord that the lease be assigned to The New Image Foundation. The Landlord agreed to the assignment but refused to release defendant from his personal liability under the lease.

The New Image Foundation commenced operating the health spa on August 9, 1979. However, from September, 1979, through January, 1980, The New Image Foundation failed to make any of the rental payments due under the lease.

---

1. The judgment is made up in the following manner: Award of damages for delinquent rent $42,082.12, interest $7,933.03, litigation expense $1,179.80, and attorney's fees $7,373.13.

The Landlord then instituted suit against defendant for the rental arrearage in Alabama. On January 11, 1980, the Landlord and defendant entered into an agreement to compromise and settle the suit for rental arrearage. The pertinent part of the agreement is as follows:

WHEREAS, by written Lease Agreement dated the 23rd day of August, 1978, the TENANT is in possession of the premises; and

WHEREAS, a dispute has arisen between the parties concerning the TENANT's rental payments and the LANDLORD has filed suit for the payment of rent and possession of the premises; and as a compromise and settlement of said matter; IT IS MUTUALLY AGREED AS FOLLOWS:

### WITNESSETH:

1. That for and in consideration of the sum of Eight Thousand Four Hundred Thirty-Seven and 50/100 Dollars ($8,437.50) representing the September, October, November, December, 1979 and January, 1980 rental on the demised premises, and in further consideration of One Thousand Six Hundred and no/100 Dollars ($1,600.00) LANDLORD's attorneys' fees, collectively totalling Ten Thousand Thirty-Seven and 50/100 Dollars ($10,037.50), to be paid by TENANT as follows: Three Thousand Three Hundred Seventy-Five and no/100 Dollars ($3,375.00) cash upon execution of this Agreement, receipt of which is hereby acknowledged, balance of Six Thousand Six Hundred Sixty-Two and 50/100 Dollars ($6,662.50) by TENANT'S Promissory Note, (a true and accurate specimen copy of said Note is attached hereto and incorporated herein by reference as Exhibit A), the parties agree to compromise and settle said dispute.

2. LANDLORD covenants to continue its lawsuit for rent and possession of the premises, pending timely payment of the Note set forth in Exhibit A and timely payment of monthly rental on the premises in the approximate amount of One Thousand Six Hundred Eighty-Seven and 50/100 Dollars ($1,687.50). At the conclusion of the payment schedule set forth in said Note, and on the condition that monthly rental is current, and TENANT has complied with lease, the LANDLORD agrees to cause said suit to be dismissed.

To secure the payment of the arrearage, the Landlord was also granted a security interest in all equipment located within the spa.

Defendant made all payments due under the January, 1980 agreement to compromise and settle the Alabama lawsuit. He also made the rental payments of $1,687.50 per month through June, 1980. The July, 1980 lease payment was not made, and the Landlord learned from another tenant that the defendant had removed a part of the equipment and vacated the leased premises. The Landlord took possession of the premises and re-leased in order to mitigate its damages.

Defendant testified that at the beginning of the lease term, he had placed improvements in the leased premises of some eighteen or nineteen thousand dollars. A part of these were removed when he vacated the premises.

■ Defendant, by his first issue, contends that the Chancellor erred in holding that the 1978 lease agreement and the 1980 agreement to compromise and settle the Alabama lawsuit were separate and distinct agreements. At trial, defendant insisted that the January, 1980 agreement modified the 1978 lease agreement and that both agreements must be construed together. He correctly states that "where an executed agreement refers to other documents and makes their conditions part of the executed agreement, the documents must be interpreted together as the agreement of the parties." *Engert v. Peerless Insurance Co.,* 53 Tenn.App. 310, 323, 382 S.W.2d 541, 547 (1964).

■ Defendant insists that the Landlord breached the provisions of the 1980 agreement by failing to dismiss the Alabama

lawsuit and that because the two instruments must be construed together, he was justified in vacating the leased premises and declaring the 1978 lease "null and void."

We disagree. The Chancellor correctly held that the January, 1980 agreement was "in no sense a modification of the [August, 1978] lease.... It was nothing more than an agreement to settle a lawsuit arising from the delinquency. [The 1980 agreement] does not modify the original lease nor does it in any way relieve the defendant from his obligation under the lease contract."

The Landlord brought suit to collect the rental payments due under the 1978 lease agreement which had accrued and were owed by defendant. In consideration of the Landlord's not going forward with the lawsuit, defendant did nothing more than to agree to pay what he owed. While the 1980 agreement does refer to the 1978 lease, the two are in no way dependent on each other. They are separate and distinct agreements.

If in fact the Landlord breached the 1980 agreement by failing to dismiss the lawsuit, that breach in no way affected defendant's obligations in the 1978 lease. Defendant was not justified in breaching the August, 1978 lease agreement.

Defendant's first issue is without merit.

Defendant's second issue is premised on the assumption that the 1980 agreement modified the 1978 lease. We have determined otherwise and, therefore, pretermit the second issue.

Defendant's third issue is as follows: "The Trial Court erred in dismissing the counterclaim of the appellant, Wright, on the theory that the appellant's remedy was to have instituted legal action in the State of Alabama."

■ Our reading of the record fails to disclose that the Chancellor dismissed defendant's counterclaim on the "theory" that defendant should have brought suit in Alabama. The Chancellor first held that the two agreements were not dependent.

He then held that even if the Landlord breached the 1980 agreement by failing to dismiss the Alabama lawsuit, damages arising from that breach would be speculative at best. We agree. Defendant could have moved the Alabama court to dismiss the rental arrearage suit on the basis that the suit had been compromised and settled. He did not do so. There is no showing that notwithstanding the lawsuit and the security agreement, defendant could not have sold the spa as a going business. He did, in fact, sell a great deal of the equipment which was the subject of the security agreement. As found by the Chancellor:

> It's inconceivable that he couldn't sell his business because of this defunct lawsuit and defunct security agreement which could have been released. He could have easily demonstrated to the Alabama court that he had to have that done because of the Landlord's breach of the agreement and he would have been entitled to having the lawsuit dismissed and the security agreement removed.

Defendant failed to prove any damages under his counterclaim. This issue is without merit.

■ Defendant next complains that "[t]he Trial Court erred in failing to award a sett [*sic*] off in favor of the defendant/appellant for valuable leasehold improvements to the leased premises."

Defendant's proof was that at the beginning of the lease in 1978, he made improvements of between eighteen and nineteen thousand dollars to the leased premises. These improvements included a whirlpool with pumps and filters, an eighty-gallon gas hot water heater, a dry sauna, carpets, drains, wall mirrors, chandeliers, and track lighting. Defendant testified that most of these improvements were improvements that were of a special design for a health spa. He testified that while the carpets and drapes were not specifically designed for his business, the carpets had been damaged by mildew.

The proof on behalf of the Landlord was that the improvements were of no value to the premises.

**522**

The Trial Court, after seeing and hearing the witnesses, found that the "improvements were worthless to the plaintiff." This Court reviews findings of fact by the Chancellor in civil actions *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn.R.App.P. 13(d). The preponderance of the evidence in this case is not otherwise.

By his fifth issue, defendant complains that the Chancellor erred in awarding interest on the damages recovered by plaintiff.

The Chancellor awarded interest of $7,933.03 upon the rental deficiency of $42,082.12.

Section 2.05 of the 1978 lease provides:

If Tenant shall fail to pay, when the same is due and payable, any rent or any additional rent, or amounts or charges of the nature described in Section 2.04 hereof, such unpaid amounts shall bear interest from the due date thereof to the date of payment at the rate of ten percent (10%) per annum.

In this case the defendant had a specific contractual obligation to pay interest if he failed to pay the rent when it was due and payable. The Chancellor did nothing more than to enforce the contract between the parties.

Defendant also insists that the doctrine of laches barred the Landlord's entitlement to interest on the unpaid rent. He states that the "Landlord had failed to offer any explanation for the delay in bringing suit and that this delay, along with the fact that he was misled to his detriment by the actions of the Landlord, make the doctrine of laches applicable." *See State v. Abernathy*, 159 Tenn. 175, 17 S.W.2d 17 (1929). This was a contract action, and the statute of limitations is six years. Suit was filed seven months after defendant's breach of the lease agreement. Laches requires that the delay be prejudicial to the defendant. *Thompson v.*

*Coates*, 627 S.W.2d 376, 380 (Tenn.App. 1981). Here, there has been no showing that the defendant was prejudiced. He was able to retain the money he owed the Landlord during the pendency of this litigation. He could have stopped the running of interest at any time by tendering the amount of the delinquent rent. This issue is without merit.

The Landlord presents one issue, that it should be awarded additional attorney's fees incurred in defending this matter on appeal.

Section 23.01 of the 1978 lease provides for an award of attorney's fees to the successful party. On remand, the Chancellor shall take such proof as is necessary to determine the amount of attorney's fees to which the Landlord is entitled for defending this matter on appeal.

The judgment of the Chancellor is affirmed with costs assessed to defendant and the cause remanded to the Chancery Court for the collection of costs, determination of the additional amount of attorney's fees to which the Landlord is entitled, and for any further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.