**FIRST NATIONAL BANK AND TRUST COMPANY, PERRY, OKLAHOMA, as Receiver for Red Rock Farmers Cooperative, Plaintiff–Appellant,**

v.

**FARMLAND INDUSTRIES, INC., Defendant–Appellee.**

No. 92–6245.

United States Court of Appeals, Tenth Circuit.

Aug. 25, 1993.

Mark S. Grossman, Crowe & Dunlevy, Oklahoma City, OK, for plaintiff-appellant First Nat. Bank and Trust.

Gerald E. Kelley, Kelley & Kelley, P.C., Oklahoma City, OK, for defendant-appellee Farmland Industries, Inc.

Before BRORBY and McWILLIAMS, Circuit Judges, and BROWN,* District Judge.

WESLEY E. BROWN, Senior District Judge.

First National Bank and Trust Company of Perry, Oklahoma, ("First National") appeals the district court's order granting summary judgment in favor of Farmland Industries, Inc. ("Farmland"). The district court concluded that First National's claim was barred by the applicable statute of limitations. We find that First National's claim is not barred by the statute of limitations; we therefore reverse and remand the case for further proceedings.

I. *Facts.*

The defendant Farmland is a corporation organized under the Cooperative Marketing Act of the state of Kansas. Its principal offices are in Kansas City, Missouri, and it has been doing business on a regular basis within the state of Oklahoma.

The Red Rock Farmers Cooperative ("Red Rock") was a cooperative organized and operated under the laws of Oklahoma. Red Rock for many years operated a cooperative grain elevator in Red Rock, Oklahoma, where it stored and processed grain and sold various products to farmers in the area. Red Rock was a member of the Farmland cooperative association and purchased products for resale in the Red Rock area. Over time and pursuant to Farmland's bylaws, Red Rock accumulated common stock and credits for common stock in Farmland by virtue of its membership in and purchases from Farmland. The stock held by Red Rock was voting non-dividend and non-interest bearing equity.

In June of 1987, the shareholders of Red Rock adopted a resolution for the voluntary liquidation and dissolution of Red Rock. First National was appointed receiver for the purpose of carrying out the liquidation and dissolution of Red Rock. First National is a banking organization with its principal office in Perry, Oklahoma.

At the time of dissolution, Red Rock was indebted to Farmland on open account in the amount of $14,392.62, and Red Rock owned stock or stock credits in Farmland in the amount of $192,950.00. Upon cessation of business, Red Rock no longer met the member eligibility requirements set forth in Farmland's bylaws. First National as receiver made demand upon Farmland for redemption and payment of Red Rock's stock and credits. Farmland agreed to set off the amount owed by Red Rock on open account against Red Rock's stock credits but refused to pay out in money the balance of the stock credits. Instead, on February 16, 1988, the balance (of $178,557.38) was converted on Farmland's books to an equitable interest called "capital credits." Farmland advised First National that in accordance with its bylaws these credits would be paid at the sole discretion and pleasure of Farmland.

First National has made repeated requests for redemption of Red Rock's capital credits,

* Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

but Farmland has thus far refused to redeem any portion of them. Farmland has not redeemed the capital credits held by any of its former members in the last five years. Capital credits may be transferred only with the approval of Farmland's board of directors and no established public market exists for transfer of the credits. First National asserts that Farmland is financially capable of redeeming the credits.

## II. *Proceedings in the District Court.*

■ First National filed a complaint on September 18, 1991, in the U.S. District Court for the Western District of Oklahoma. The complaint alleged essentially the facts outlined above and concluded:

> By law the monies owed by Farmland should have been paid within a reasonable time, but in any event such monies should have been paid within one year of Red Rock's cessation of business with Farmland, pursuant to Kan.Stat.Ann. § 17–1609. Farmland's continued refusal to pay First National as receiver of Red Rock is unlawful and unreasonable.

Aplt.App.Doc. 2 at 3. First National then brought a motion for summary judgment, arguing that K.S.A. § 17–1609(i), part of the Kansas Cooperative Marketing Act governing cooperative associations, required Farmland to redeem the capital credits. First National cited a portion of the statute which stated:

> In case of the withdrawal or expulsion of a member, the board of directors shall equitably and conclusively appraise his property interests in the association and shall fix the amount thereof in money which shall be paid to him within one year after such expulsion or withdrawal.

K.S.A. § 17–1609(i) (1988).[1] In its motion for summary judgment, First National argued that Farmland had violated the statute by failing to redeem Red Rock's stock within one year of Red Rock's dissolution in July of 1987.

Farmland responded with its own motion for summary judgment. Farmland argued that K.S.A. § 17–1609(i) did not impose any legal duty upon cooperatives but was simply an example of a bylaw that associations could choose to adopt.[2] Farmland also argued that, even assuming that the statute imposed a legal duty, the plaintiff's claim was barred by Kansas' three-year statute of limitations for actions upon a liability created by statute. *See* K.S.A. 60–512. Farmland argued that the undisputed facts showed that the statute of limitations began to run either in May of 1988, one year after Red Rock ceased to do business, or alternatively on July 29, 1988, one year after First National initially made demand upon Farmland for redemption of the equity. (The complaint in this case was filed over three years after both of these dates—on September 18, 1991.) Farmland's statement of facts in support of the motion also pointed out that under its bylaws Red Rock ceased to be qualified for membership in Farmland as a result of its cessation of business in June of 1987. Farmland went on to state, however, that Red Rock "never attempted to withdraw ... its membership in Farmland nor was Red Rock ever expelled from membership in Farmland." Aplt.App.Doc. 6 at 5.

In reply, First National asserted that its claim was one founded upon a contract and was therefore governed by a five-year limitations period. It argued that Farmland's common stock should be regarded as an investment contract and that K.S.A. 17–1609(i)

1. The Kansas legislature amended § 17–1609 in 1992 and eliminated the above-cited language from the statute. Neither party has addressed the amendment or discussed whether it has any effect on First National's claim. We leave any issue concerning the possible effect of the 1992 amendment to the parties and the district court upon remand.

2. Although the provision in question states that the board of directors "shall" appraise the members interest and pay it out, the introductory clause of § 17–1609 creates some uncertainty as to whether the provision is mandatory or permissive. The ambiguity is created by the first paragraph of § 17–1609, which provides: "Bylaws. Each association incorporated under this act must, within thirty (30) days after its incorporation, adopt for its government and management a code of bylaws, not inconsistent with the powers of this act. *Each association under its bylaws may also provide for any or all of the following matters:*" (emphasis added).

was "incorporated by law into this contract." Aplt.App.Doc. 7 at 5. First National also argued that Farmland had tolled the statute of limitations by acknowledging an obligation to redeem the capital credits.

### a. The District Court's Ruling.

The district court granted Farmland's motion for summary judgment, finding that the claim was barred by a three-year statute of limitations governing actions upon liabilities created by statute. The court rejected First National's argument that its claim was founded upon contract, stating: "The claim of First National is statutory as couched in the complaint. Whether or not another and different cause of action against Farmland would lie is a question not now before the Court." Aplt.App.Doc. 8 at 4. The court went on to hold that First National's claim was filed after the three-year limitations period, finding that "[t]he event that triggered the three (3) year statute of limitations in this instance was First National's July 29, 1987, demand on Farmland for redemption of its equity interests." Id. In its statement of undisputed facts supporting summary judgment, the court stated: "As a result of its cessation of business in June of 1987, Red Rock ceased to be qualified for membership in Farmland. Red Rock never attempted to withdraw its membership in Farmland nor was Red Rock ever expelled from membership in Farmland." Id. at 2. The court did not address First National's contention that Farmland's conduct tolled the statute of limitations. Also, in light of its ruling on the statute of limitations, the court did not reach the question of whether K.S.A. § 17–1609(i) imposed a legal duty on Farmland to redeem the credits or whether it was simply a permissive provision.

### III. Discussion On Appeal.

Initially, we decline the parties' invitation to resolve the issue of whether the one-year "pay out" language in K.S.A. § 17–1609(i) was mandatory or permissive in nature. The district court based its ruling solely on the statute of limitations question and that is the only issue before us on appeal. We leave all other issues for the district court to decide in the first instance. Solely for purpose of applying the statute of limitations, we have assumed (as did the district court) that § 17–1609(i) is mandatory in nature. With this assumption made clear, we turn to the statute of limitations issue.

██ We first reject First National's argument that the district court erred by failing to apply a statute of limitations applicable to claims arising out of written contracts. First National's claim as set forth in the complaint was one alleging a breach of a duty arising from a statute. The complaint alleged that Farmland was obligated to pay out the capital credits within one year of cessation of business "pursuant to Kan.Stat.Ann. § 17–1609." Aplt.App.Doc. 2 at 3. No facts were pled to show that any such obligation arose from an agreement between the parties. First National's argument that Farmland's bylaws "incorporated" K.S.A. § 17–1609(i) was not pled in the complaint. Accordingly, the district court did not err in refusing to apply a five-year statute of limitations. Moreover, the district court correctly observed that First National's extensive argument about whether a Kansas or Oklahoma statute of limitations should apply to its claim was not a material issue. Both Kansas and Oklahoma provide for a three-year limitations period for actions upon liabilities created by statute. See Kan.Stat.Ann. § 60–512(2); Okla.Stat. tit. 12, § 95. Thus, the district court correctly determined that the plaintiff's claim is subject to a three-year statute of limitations.

Although we agree with the district court that the plaintiff's claim is subject to a three-year limitations period, we find that the district court erroneously determined that plaintiff's claim was filed outside of that period. Initially, we note that the district court asserted that "Red Rock never attempted to withdraw its membership in Farmland nor was Red Rock ever expelled from membership . . . ." Aplt.App.Doc. 8 at 4. If true, however, such a circumstance would preclude a finding that the plaintiff's claim was untimely. A limitations period begins to run from the time a cause of action first accrues, which is generally the time that a suit may first be maintained thereon. See K.S.A. 6–

510 and *State ex rel. Grassie v. Masterson,* 221 Kan. 540, 561 P.2d 796, 801 (1977). *See also* Okla.St.Ann. tit. 12, § 95. The statute relied upon by the plaintiff as the basis of its claim provides: "In case of the withdrawal or expulsion of a member, the board of directors shall equitably and conclusively appraise his property interests in the association and shall fix the amount thereof in money which shall be paid to him within one year after such expulsion or withdrawal." K.S.A. § 17–1609(i). By definition, a claim for breach of any duty set forth in this section could accrue only one year after the withdrawal or expulsion of the member. The district court's assertion that Red Rock never withdrew its membership and was never expelled is inconsistent with a finding that the plaintiff's claim is time-barred. The limitations period cannot have run at all in the absence of Red Rock's withdrawal or expulsion.

This court conducts a *de novo* review of a district court's ruling on summary judgment. *United Bank & Trust Co. v. Kansas Bankers Sur. Co.,* 901 F.2d 1520, 1522 (10th Cir.1990). We apply the same legal standard employed by the district court under Fed.R.Civ.P. 56(c). The record shows that there are no disputed facts that would preclude a determination of the statute of limitations issue. Based on our review of the undisputed facts, we find that Red Rock withdrew or was expelled from membership in Farmland on February 16, 1988. Assuming that K.S.A. 17–1609(i) imposed an obligation on a cooperative such as Farmland to pay out a member's equity within one year of the member's withdrawal or expulsion, Red Rock's cause of action under the statute accrued on February 16, 1989. First National filed its complaint within three years of that date, and its claim is therefore not barred by the statute of limitations.

In order to determine the statute of limitations question, the first issue that must be addressed is whether the actions of the parties constituted a "withdrawal" or an "expulsion" of Red Rock within the meaning of K.S.A. § 17–1609(i). Whether the undisputed facts rise to the statutory standard of a "withdrawal" or "expulsion" is a question of law that we review *de novo*. *See Supre v. Ricketts,* 792 F.2d 958, 961 (10th Cir.1986).

Section 17–1609(i) does not elaborate on what constitutes a "withdrawal" or an "expulsion," yet the import of these terms is clear from the context in which they are used. The significance of either a withdrawal or an expulsion is that it is an act by one of the parties which terminates membership in the association. The manifest purpose of a provision of the type set forth in § 17–1609(i) is to insure that a cooperative redeems a member's equity within a reasonable time after membership in the association is terminated, regardless of whether the termination occurs at the impetus of the member or the association. In this regard, we do not think that a formal declaration of withdrawal or expulsion is necessarily contemplated by the statute. Moreover, the distinction between a withdrawal, which implies a voluntary termination, and an expulsion, which connotes an involuntary termination, is not significant under the facts of this case. Rather, the significant consideration is the point at which Red Rock's membership in the association was terminated. Given this framework for applying the statutory language, we have little difficulty determining from the facts that Red Rock withdrew or was expelled from membership in the association on February 16, 1988, when Farmland converted Red Rock's stock to capital credits. *See* Aplt. App. at 159.

Red Rock's membership in Farmland was governed by the provisions of Farmland's articles of incorporation and bylaws. Farmland's bylaws define a "member" as "a holder of common stock or Associate Member common stock of the Association." *Farmland Industries, Inc. Bylaws,* Art. II, Sec. 5. By definition, a holder of capital credits would not be considered a member of the association. Red Rock (and later First National on Red Rock's behalf) held common stock in Farmland until the stock was converted to capital credits on February 16, 1988. Thus, Red Rock continued to be a member of the Farmland association until that time. Although First National, through correspondence to Farmland, clearly signalled its intention to redeem Red Rock's equity and to

terminate Red Rock's membership prior to the conversion of the stock, we see nothing to indicate that such an intention to withdraw by itself would have automatically terminated Red Rock's membership. Similarly, the fact that Red Rock no longer met the qualifications for membership after it ceased to do business and dissolved did not automatically terminate its membership. As written, Farmland's articles and bylaws indicate that a holder of common stock remains a member until action is taken to terminate the membership by Farmland's board of directors.[3] Red Rock's membership in the association was thus terminated at Farmland's prerogative upon the board of directors' issuance of capital credits to Red Rock in exchange for the common stock it held. Under these circumstances, where the parties acted together to terminate Red Rock's membership, the conversion of the stock to capital credits is the significant event for purposes of applying § 17–1609(i) and could be considered both a "withdrawal" and an "expulsion" of a member under the terms of the statute. Red Rock's claim thus accrued one year after that conversion, on February 16, 1989; and its complaint, filed on September 18, 1991, was within the three-year limitations period.

### IV. *Conclusion.*

In accordance with the foregoing discussion, we conclude that the plaintiff's claim is not barred by the statute of limitations. The judgment of the district court is therefore REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.

---

**3.** Farmland's Articles of Incorporation, Art. VI, Sec 2, provided in part: "The common stock of this Association may be purchased, owned, or held only by producers of agricultural products and associations of such producers, who patronize the Association in accordance with uniform terms and conditions and only such producers and associations of such producers shall be regarded as eligible voting members of the Association. In the event the Board of Directors of the Association shall find, following a hearing, that any holder of the common stock of this Association does not meet the qualifications as may be established by the Board of Directors for holders thereof, such persons shall have no rights or privileges on account of such common stock to vote for director(s) or to vote on the management or affairs of the Association, and the Association shall have the right, at its option, (a) to purchase such common stock at its book or par value, whichever is less, as determined by the Board of Directors of the Association, or (b) in exchange for such common stock, to issue an equivalent par value amount of associate member common stock or to issue or record on the books of the Association, capital credits in an equivalent amount."